173 P.3d 484

'ŌLELO: THE CORPORATION FOR
COMMUNITY TELEVISION,
Plaintiff–Appellee,

v.

OFFICE OF INFORMATION PRAC-
TICES and Les Kondo, Director of the
Office of Information Practices, in his
official capacity, Defendants–Appel-
lants.

No. 27421.

Supreme Court of Hawai'i.

Dec. 21, 2007.

Leslie H. Kondo, Cathy L. Takase, and Jennifer Z. Brooks, on the briefs, Honolulu, for defendants-appellants Office of Information Practices and Les Kondo, Director of the Office of Information Practices, in his official capacity.

Paul Alston and Lea Hong (of Alston Hunt Floyd & Ing), on the briefs, Honolulu, for plaintiff-appellee 'Ōlelo: The Corporation for Community Television.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Defendants–Appellants the Hawai'i Office of Information Practices and Les Kondo, Director of Office of Information Practices, in his official capacity [hereinafter, collectively OIP], appeal from the June 30, 2005 final judgment of the circuit court of the first circuit [1] entered pursuant to its May 23, 2005 order that (1) granted summary judgment to Plaintiff–Appellee, 'Ōlelo: the Corporation for Community Television ('Ōlelo), and (2) denied OIP's cross-motion for summary judgment.

On September 6, 2002, OIP issued OIP opinion letter number 02–08 ('Ōlelo letter). OIP Op. Ltr. No. 02–08 (2002), 2002 WL 31126635. The 'Ōlelo letter concluded that 'Ōlelo met the definition of an "agency" contained in Hawai'i Revised Statutes (HRS) § 92F–3 (1993) and, therefore, was subject to the provisions of Hawai'i's Uniform Information Practices Act (UIPA), HRS chapter 92. As an agency subject to UIPA, OIP concluded that 'Ōlelo was required to disclose "government records."

The current controversy began in 2004 when 'Ōlelo received a request from three individuals for a master list with contact information (names, addresses, telephone numbers, and email addresses) for 'Ōlelo's current clients, presenters, producers, volunteers, and "all persons eligible to vote in 'Ōlelo's election." When OIP subsequently demanded that 'Ōlelo disclose the requested information, 'Ōlelo filed a complaint for declaratory relief in circuit court requesting that the court declare that it is not an agency under UIPA. After a *de novo* review of the legal arguments and evidence submitted by both parties, the circuit court granted 'Ōlelo summary judgment and denied OIP's corresponding motion for summary judgment.

OIP appealed to this court on July 26, 2005. OIP alleges that the circuit court erred because (1) it did not apply the correct standard of review to and/or grant deference to OIP's conclusion that 'Ōlelo was an agency subject to UIPA, and (2) it concluded that 'Ōlelo was not an agency as defined in UIPA.

Based upon the following analysis, we affirm the circuit court's declaratory judgment that 'Ōlelo is not an agency subject to UIPA.

## I. BACKGROUND

### A. 'Ōlelo's Creation

Under Hawai'i's Cable Television System's Act (CTSA), the director of the Department of Commerce and Consumer Affairs (DCCA) is authorized to grant cable franchises. HRS § 440G–8(a) (1993). Operators of cable franchises are required to "designate three or more channels for public, educational, or governmental use" (PEG). HRS § 440G–8.2. PEG channels are funded by access operating fees and equipment facilities fees that the DCCA directs cable franchise operators to pay directly to the PEG facilitators. The allocated money does not pass through the State's general fund.

In 1988, the DCCA director granted a cable franchise to Oceanic Time Warner Cable (Oceanic). Pursuant to the CTSA, the director required that Oceanic set aside PEG channels. This necessitated the creation of entities that would facilitate the production of programming that would be broadcast on the PEG channels.

The DCCA director intended that PEG facilitators be "independent, private non-profit community based organization[s]" that would operate "separately and independently

---

1. The Honorable Victoria S. Marks presided over this matter.

from the state" and not, be considered "'arm[s]' of the State or be perceived as taking 'State action.'" Specifically, the DCCA director wanted to structure the facilitation of PEG channels in such a way that the State would be shielded "from any appearance of content control in the future operation of 'Ōlelo." To accomplish this, in 1989 the DCCA director "appointed a nine-person Access Planning Commission to make recommendations to him regarding the creation and implementation of a not-for-profit organization to manage public, education, and government access channels, facilities, equipment, and funding." Based on the Access Planning Commission's recommendations, the DCCA director chartered 'Ōlelo to manage PEGs on Oahu. 'Ōlelo subsequently incorporated and became a nonprofit corporation with its principal place of business in the state of Hawai'i.

Since 1989, 'Ōlelo has facilitated all of the Oahu PEG channels pursuant to a contract between 'Ōlelo and the DCCA. According to the contract, 'Ōlelo is responsible for (1) managing PEG channels; (2) providing facilities and equipment to produce and air PEG programs; (3) training governmental, educational, and community organizations, as well as members of the general public, how to use 'Ōlelo production facilities and equipment; (4) marketing and promoting 'Ōlelo channels and programming as well as 'Ōlelo production facilities; and (5) providing support to PEG users through such methods as grants, production assistance, and special projects to support PEG users. There is nothing in the agreement that mandates, describes, or recommends how 'Ōlelo should accomplish its responsibilities.

The DCCA director retains the right to be generally informed of 'Ōlelo's activities. 'Ōlelo must submit to the DCCA

 a. Quarterly and annual financial reports.

 b. Quarterly and annual activity reports.

 c. An annual operational plan.

 d. An annual budget.

 e. An annual audit report.

Additionally, 'Ōlelo must provide the DCCA director "a current roster of the Board of Directors," and evidence of adequate, reason-ably commercially-available insurance in several areas.

Currently, 'Ōlelo functions as a nonprofit corporation with a nine-member board of directors. At the time of 'Ōlelo's creation, the DCCA director had the authority to appoint all seven members of 'Ōlelo's initial Board of Directors (Board). However, the DCCA director delegated his authority to the Access Planning Commission, which appointed all of the initial Board members. Eventually, the number of Board members was increased to nine and the cable operator was granted the authority to appoint Board members. At the time the dispute between 'Ōlelo and OIP arose, the DCCA director had the authority to appoint six of 'Ōlelo's nine Board members and the President of Oceanic had the authority to appoint the remaining three Board members. Presently, one of the DCCA's six appointee positions is reserved for a person who is elected by PEG users and approved by the DCCA director.

'Ōlelo's Board participates in the DCCA's selection of new Board appointees. According to 'Ōlelo's bylaws, the current Board must furnish the DCCA director and Oceanic with a slate of recommended Board members. If the DCCA director or Oceanic chooses to appoint an individual not on the slate, they must first consult with the Board.

It is undisputed that the DCCA is not informed of and does not exercise control over 'Ōlelo's day-to-day operations. 'Ōlelo's employees are paid from money collected from Oceanic and are not considered state employees for any purpose. All equipment and leases are in 'Ōlelo's name. 'Ōlelo also retains the intellectual property rights to its programming, logo, and other material it develops. Day-to-day operations are managed by the 'Ōlelo Chief Executive Officer (CEO) who answers to the Board. The DCCA has no direct control over the hiring or firing of the CEO. Most important, there is no indication the DCCA has any editorial oversight over 'Ōlelo's programming.

**B.** *Office of Information Practices*

OIP was established under UIPA, HRS § 92F–41. OIP's authority and duties are enumerated in HRS § 92F–42 (Supp.2006).

342

Relevant to this controversy are OIP's duty to "upon request, review and rule on an agency denial of access to information or records," HRS § 92F–42(1), and authority to "[u]pon request ... provide advisory opinions or other information regarding that person's rights and the functions and responsibilities of agencies under [UIPA]." HRS § 92F–42(3).

OIP review is entirely optional. OIP's authority is triggered when a person who has been denied access to agency records requests an advisory opinion from OIP in lieu of seeking immediate judicial relief under section HRS § 92F–15.5(a) or when a person requests that OIP provide an advisory opinion pertaining to the person's rights to certain documents. Upon request, OIP issues an opinion letter stating whether the agency records in question are subject to disclosure under UIPA. HRS § 92F–42(3). However, the issuance of an opinion letter "shall not prejudice the person's right to appeal to the circuit court after a decision is made by the office of information practices." HRS § 92F–15.5(a). If judicial review is sought, OIP advisory opinion letters are admissible, HRS § 92F–15(b), but the opinion letters do not constitute contested cases subject to the Hawai'i Administrative Procedure Act. HRS § 92F–42(1). An agency denial of access to public records is reviewed *de novo*. HRS § 92F–15(b).

## C. *Procedural History*

On several occasions, members of the public have contacted OIP to request advisory opinions pertaining to the applicability of UIPA to PEG facilitators. On October 20, 1993, OIP issued an advisory opinion letter which concluded that Akaku–Maui Television, Inc. (Akaku), the PEG facilitator on Maui, was not an agency subject to UIPA because it was not "owned, operated, or managed" by the DCCA or any State or county agency. OIP Op. Ltr. No. 93–18 (1993), 1993 WL 531347. In reaching its conclusion, OIP emphasized that community broadcasting was not a required government function. On December 13, 1994, OIP issued a similar advisory opinion letter concluding that Ho'ike: Kauai Community Television Inc. (Ho'ike),

the PEG facilitator on Kauai, was not an agency subject to UIPA because it was similarly situated to Akaku, and facilitating PEGs was not a government function. OIP Op. Ltr. No. 94–23 (1994), 1994 WL 733580. On December 13, 1994, OIP issued another advisory opinion letter concluding that Na Leo 'O Hawai'i Inc. (Na Leo), the PEG facilitator on the island of Hawai'i, was not an agency subject to UIPA because it was similarly situated to Akaku and Ho'ike and facilitating PEGs was not a government function. OIP Op. Ltr. No. 94–24 (1994), 1994 WL 733581.

However, in the 2002 'Ōlelo letter at issue herein, OIP did an "about face" on its prior opinions concerning the applicability of UIPA to PEGS, and concluded that 'Ōlelo and Ho'ike "are corporations owned, operated, or managed by or on behalf of this State as set forth under section 92F–3 of the Hawai'i Revised Statutes." OIP Op. Ltr. No. 02–08, 34. OIP's revised opinion was based upon "the totality of circumstances," which included OIP's view that (1) 'Ōlelo and Ho'ike were originally created by the government, notwithstanding their current corporate form, OIP Op. Ltr. No. 02–08, 10–14; 20–27; (2) the franchise fees paid by Oceanic are public funds, *id.* at 27–32; (3) even though the DCCA does not exercise "day-to-day control or management over the PEG Access Organizations," the DCCA directly controls 'Ōlelo and Ho'ike through its power to appoint a majority of directors to their Boards and the DCCA indirectly controls 'Ōlelo and Ho'ike through its authority to designate and fund PEG channels, *id.* at 14–20; and (4) two United States Supreme Court First Amendment decisions, when read together, imply that providing community television is, in fact, a government function. *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 400, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995) (holding that when "the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government for purposes of the First Amendment."); *Denver Area Educ. Telecomm. Consortium, Inc. v. FCC*, 518 U.S. 727, 116 S.Ct. 2374, 135

L.Ed.2d 888 (1996) (holding that a statutory provision that permitted a cable operator to prevent transmission of "patently offensive" programming on PEG channels was an unconstitutional First Amendment restriction because the provision was not necessary to further the government objective of protecting children).

'Ōlelo subsequently filed a declaratory judgment action against OIP on August 18, 2004, requesting that the circuit court determine that (1) "'Ōlelo is not 'owned, operated, or managed' by the State under UIPA" and (2) "'Ōlelo is not a state 'agency' under UIPA." On April 15, 2005, 'Ōlelo filed a motion for summary judgment. OIP responded with a cross-motion for summary judgment on May 23, 2005.

The circuit court granted 'Ōlelo's motion for summary judgment, and denied OIP's corresponding motion, on May 23, 2005. The circuit court ruled that: "As a matter of law, 'Ōlelo is not an agency under the Uniform Information Practices Act, HRS § 92F–3." The circuit court's ruling was based upon the following findings of fact:

1. 'Ōlelo is a private, nonprofit corporation.

2. 'Ōlelo is not supported directly by taxpayer funds. Rather, it gets its funds from the cable provider, Time Warner Cablevision, through access fees paid by viewers.

3. There is no government control over 'Ōlelo's activities. 'Ōlelo's Chief Executive Officer and staff run its day-to-day operations.

4. 'Ōlelo's employees are not State Employees.

5. 'Ōlelo has title to its equipment and leases, not the State.

6. 'Ōlelo's activities are not a required function of any government agency.

The circuit court entered its final judgment on June 30, 2005. OIP filed a timely notice of appeal alleging the following points of error:

1. The circuit court erred by not applying the judicial standards of review applicable to agency determinations.

2. The circuit court erred by failing to defer to OIP's statutory construction absent a finding of palpable error.

3. The circuit court erred in its interpretation of HRS § 92F–3, which renders certain statutory language meaningless and conflicts with its intent and the UIPA's purpose.

4. The circuit court erred by failing to defer to OIP's determination absent a finding that OIP abused its discretion.

Significantly, OIP did not allege that any of the circuit court's findings of fact were clearly erroneous. Consequently, no material facts are in dispute.

## II. STANDARDS OF REVIEW

### A. Motion for Summary Judgment

A circuit court order granting or denying summary judgment is reviewed *de novo*. *Hawai'i Community Federal Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting summary judgment is as follows:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted); *Coon v. City and County of Honolulu*, 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002); *Kau v. City and County of Honolulu*, 104 Hawai'i 468, 474, 92 P.3d 477, 483 (2004).

## 344

### B. *Deference to Administrative Agencies*

 In determining whether an agency determination should be given deference, the standard to be applied is as follows:

> [W]hen reviewing a determination of an administrative agency, we first decide whether the legislature granted the agency discretion to make the determination being reviewed. If the legislature has granted the agency discretion over a particular matter, then we review the agency's action pursuant to the deferential abuse of discretion standard (bearing in mind that the legislature determines the boundaries of that discretion). If the legislature has not granted the agency discretion over a particular matter, then the agency's conclusions are subject to de novo review.

*Paul's Electrical Service, Inc. v. Befitel,* 104 Hawai'i 412, 419–20, 91 P.3d 494, 501–502 (2004).

### C. *Statutory Interpretation*

 This court reviews the interpretation of a statute *de novo. Hawai'i Org. of Police Officers v. Society of Prof. Journalists Univ. of Hawai'i Chapter,* 83 Hawai'i 378, 402, 927 P.2d 386, 410 (1996). Statutory construction is guided by established rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

*Peterson v. Hawaii Elec. Light Co., Inc.,* 85 Hawai'i 322, 327–28, 944 P.2d 1265, 1270–71 (1997), *superseded on other grounds by* HRS § 269–15.5 (Supp.1999) (block quotation format, brackets, citations, and quotation marks omitted).

### III. *DISCUSSION*

OIP essentially asserts that the circuit court erred in (1) not giving deference to OIP's determination that 'Ōlelo was an agency subject to UIPA and (2) concluding that 'Ōlelo was not an agency subject to UIPA. We respond to each argument in turn.

### A. *The Circuit Court Did Not Err When it Reviewed 'Ōlelo's Request for Declaratory Judgment De Novo.*

 In order to determine whether the legislature granted OIP the discretion to determine whether 'Ōlelo is an agency for purposes of UIPA, we first look to the statutory language setting forth OIP's powers and duties:

> The director of the office of information practices:
>
> (1) Shall, upon request, review and rule on an agency denial of access to information or records, or an agency's granting of access; provided that any review by the office of information practices shall not be a contested case under chapter 91 and shall be optional and without prejudice to rights of judicial enforcement available under this chapter;
>
> (2) Upon request by an agency, shall provide and make public advisory guidelines, opinions, or other information concerning that agency's functions and responsibilities;
>
> (3) Upon request by any person, may provide advisory opinions or other information regarding that person's rights and the functions and responsibilities of agencies under this chapter;
>
> (4) May conduct inquiries regarding compliance by an agency and investigate possible violations by any agency;
>
> (5) May examine the records of any agency for the purpose of paragraph (4) and seek to enforce that power in the courts of this State;
>
> (6) May recommend disciplinary action to appropriate officers of an agency;
>
> (7) Shall report annually to the governor and the state legislature on the activities and findings of the office of information

practices, including recommendations for legislative changes;

(8) Shall receive complaints from and actively solicit the comments of the public regarding the implementation of this chapter;

(9) Shall review the official acts, records, policies, and procedures of each agency;

(10) Shall assist agencies in complying with the provisions of this chapter;

(11) Shall inform the public of the following rights of an individual and the procedures for exercising them:

(A) The right of access to records pertaining to the individual;

(B) The right to obtain a copy of records pertaining to the individual;

(C) The right to know the purposes for which records pertaining to the individual are kept;

(D) The right to be informed of the uses and disclosures of records pertaining to the individual;

(E) The right to correct or amend records pertaining to the individual; and

(F) The individual's right to place a statement in a record pertaining to that individual;

(12) Shall adopt rules that set forth an administrative appeals structure which provides for:

(A) Agency procedures for processing records requests;

(B) A direct appeal from the division maintaining the record; and

(C) Time limits for action by agencies;

(13) Shall adopt rules that set forth the fees and other charges that may be imposed for searching, reviewing, or segregating disclosable records, as well as to provide for a waiver of fees when the public interest would be served;

(14) Shall adopt rules which set forth uniform standards for the records collection practices of agencies;

(15) Shall adopt rules that set forth uniform standards for disclosure of records for research purposes;

(16) Shall have standing to appear in cases where the provisions of this chapter are called into question;

(17) Shall adopt, amend, or repeal rules pursuant to chapter 91 necessary for the purposes of this chapter; and

(18) Shall take action to oversee compliance with part I of chapter 92 by all state and county boards including:

(A) Receiving and resolving complaints;

(B) Advising all government boards and the public about compliance with chapter 92; and

(C) Reporting each year to the legislature on all complaints received pursuant to section 92–1.5.

HRS § 92F–42.

 OIP was thus created to facilitate the implementation of UIPA, whose purposes are set forth in HRS § 92F–2:

**Purposes; rules of construction.** In a democracy, the people are vested with the ultimate decision-making power. Government agencies exist to aid the people in the formation and conduct of public policy. Opening up the government processes to public scrutiny and participation is the only viable and reasonable method of protecting the public's interest. Therefore the legislature declares that it is the policy of this State that the formation and conduct of public policy—the discussions, deliberations, decisions, and action of government agencies—shall be conducted as openly as possible.

The policy of conducting government business as openly as possible must be tempered by a recognition of the right of the people to privacy, as embodied in section 6 and section 7 of Article I of the Constitution of the State of Hawai'i.

This chapter shall be applied and construed to promote its underlying purposes and policies, which are to:

(1) Promote the public interest in disclosure;

(2) Provide for accurate, relevant, timely, and complete government records;

(3) Enhance governmental accountability through a general policy of access to government records;

(4) Make government accountable to individuals in the collection, use, and dissemination of information relating to them; and

(5) Balance the individual privacy interest and the public access interest, allowing access unless it would constitute a clearly unwarranted invasion of personal privacy.

In brief summary, OIP's powers and duties include: providing guidance to the public and agencies as to when agency records should be opened to the public; monitoring agency compliance with UIPA; and adopting procedural rules related to the disclosure of agency records. Therefore, a matter such as balancing the public's interest in open government records against an individual's right to privacy under article I section 6 and section 7 of the Hawai'i Constitution is within OIP's designated area of expertise and is reviewed pursuant to the deferential abuse of discretion standard.

▆▆▆ Conversely, threshold issues that relate to the applicability of UIPA, such as the definition of "agency" or "government record," are not left to OIP's discretion. Instead, they were explicitly defined by the legislature in HRS § 92F–3. *See Paul's Elec. Serv.,* 104 Hawai'i at 417, 91 P.3d at 499 ("[A]dministrative agencies are created by the legislature, and the legislature determines the bounds of the agency's authority"); *Morgan v. Planning Dept., County of Kauai,* 104 Hawai'i 173, 184, 86 P.3d 982, 993 (2004) ("'An administrative agency can only wield powers expressly or implicitly granted to it by statute.'") (quoting *TIG Ins. Co. v. Kauhane,* 101 Hawai'i 311, 327, 67 P.3d 810, 826 (App.2003)).

▆▆▆ Because the legislature has defined "agency" in UIPA, OIP's determination that 'Ōlelo was an agency subject to UIPA is not entitled to the deferential abuse of discretion standard on review. The circuit court thus correctly ruled that the issue of whether

'Ōlelo is an "agency," as defined by UIPA, is a question of law to be reviewed *de novo.*[2]

B. *'Ōlelo is Not an Agency for Purposes of UIPA.*

▆▆▆ The issue of whether an entity, such as 'Ōlelo, is an "agency" as defined in UIPA is one of first impression for this court. "Agency," in the context of the applicability of UIPA, is defined as follows:

"Agency" means any unit of government in this State, any county, or any combination of counties; department; institution; board; commission; district; council; bureau; office; governing authority; other instrumentality of state or county government; or *corporation* or other establishment *owned, operated, or managed by or on behalf of this State* or any county, but does not include the nonadministrative functions of the courts of this State.

HRS § 92F–3 (emphases added).

The dispute in this case is whether 'Ōlelo is a *"corporation* [3] ... *owned, operated, or managed by or on behalf of this State."*

1. OIP's position

▆▆▆ OIP contends that 'Ōlelo is a corporation "owned, operated, or managed by or on behalf of this State" based on a "totality of the circumstances test," adopted by the Connecticut supreme court, which considers four factors:

(1) whether the entity performs a governmental function;

(2) the level of government funding;

(3) the extent of government involvement or regulation; and

(4) whether the entity was created by the government.

*Connecticut Humane Society v. Freedom of Info. Comm'n,* 218 Conn. 757, 591 A.2d 395, 397 (1991). However, the Connecticut freedom of information statute is substantially

---

**2.** Interestingly, UIPA does not provide OIP with enforcement powers to compel an agency to make government records available or to *itself* seek court assistance to compel disclosure. Instead, UIPA provides that "a *person* aggrieved by a denial of access to a government record may bring an action against the agency" and that "the

circuit court shall hear the matter *de novo.*" HRS § 92F–15(a)-(b) (emphasis added).

**3.** Although OIP suggests that 'Ōlelo may be an "instrumentality" of the State, both parties agree that 'Ōlelo is a nonprofit corporation.

different from UIPA.[4] Significantly, it does not contain the provision at issue herein, "a corporation . . . owned, operated or managed by or on behalf of this State." Therefore, the Connecticut supreme court test is of limited utility when determining whether 'Ōlelo is an "agency" within the meaning of UIPA.

OIP next contends that federal caselaw interpreting the federal "state actor" test supports its position that 'Ōlelo is a state agency under UIPA. OIP initially cites *Lebron*, 513 U.S. at 400, 115 S.Ct. 961, for its test that finds an entity is a "state actor" when

> the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government for purposes of the First Amendment.

OIP Op. Ltr. No. 02–08, 10.

OIP also cites two additional federal cases to support its contention that PEG facilitators perform a government function: *Denver Area Educ. Telecomm.*, 518 U.S. 727, 116 S.Ct. 2374, and *Demarest v. Athol/Orange Community Television Inc.*, 188 F.Supp.2d 82 (D.Mass.2002). *Denver Area Educational Telecommunications* declared unconstitutional a provision of the federal Cable Television and Consumer Protection and Competition Act of 1992 that permitted cable operators to prohibit the transmission of "patently offensive" programming on PEG channels. In a plurality opinion, the United States Supreme Court held that the provision violated the first amendment because the mixed public-private supervisory scheme of most PEGs rendered the restriction not "necessary" to the government purpose of

protecting children from offensive material.[5] The first amendment was implicated not because PEG channels were acting on behalf of the state, but because the statutory provision at issue constituted a government regulation of free speech. 518 U.S. at 740–41 116 S.Ct. 2374.

In contrast, *Demarest* dealt with a PEG operator's ability to regulate speech that was broadcast on PEG channels. In *Demarest*, the United States District Court for the District of Massachusetts granted a preliminary injunction against a PEG facilitator because it found a substantial likelihood that the PEG facilitator would be found a "state actor" for purposes of the first and fourteenth amendments. Central to the district court's finding that the PEG facilitator in question was "bound by the mandates of the First Amendment" was the fact that it was created by the government "to serve the community" and all of its "directors [were] appointed by the government." 188 F.Supp.2d at 91.

OIP's reliance on *Lebron, Denver Area Educational Telecommunications,* and *Demarest* is misplaced because these cases are not relevant to whether 'Ōlelo is "owned, operated, or managed by or on behalf" of the State for purposes of UIPA. The aforementioned cases deal with the applicability of constitutional obligations, not whether an entity is subject to a federal or state freedom of information law. Furthermore, in the federal context, entities found to be "state actors" for one purpose are not necessarily "agencies" for purposes of the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552 et seq. (2007). *See Irwin Mem'l Blood Bank of the San Francisco Med. Soc'y v. Int'l Red Cross*, 640 F.2d 1051, 1052 (9th Cir.1981). In *Irwin*, the Ninth Circuit Court of Appeals

---

4. The Connecticut Freedom of Information Act, General Statutes of Connecticut § 1–18a(a) defines "public agency" or "agency" as:

> any executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, including any committee of any such office, subdivision, agency, department, institu-

tion, bureau, board, commission, authority or official, and also includes any judicial office, official or body or committee thereof but only in respect to its or their administrative functions.

*Connecticut Humane Society*, 591 A.2d at 396 n. 1.

5. Justices Kennedy and Ginsburg concurred in the result, but they considered PEG channels to be designated public forums, and thus, would have applied strict scrutiny to the restriction.

found that the relevance of *Department of Employment v. United States*, 385 U.S. 355, 358, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966), a Supreme Court case that determined the Red Cross was an "instrumentality of the United States" for purposes of immunity from state taxation, was "substantially diminished" in the context of FOIA because Congress had "expressly defined" what agencies FOIA applied to.[6] *Irwin*, 640 F.2d at 1052. *See also Dong v. Smithsonian Inst.*, 125 F.3d 877 (D.C.Cir.1997) (holding that even though the Smithsonian Institute was an agency for purposes of the Federal Tort Claims Act, it did not meet the definition of "agency" under the federal Administrative Procedure Act, or FOIA, from which the Federal Privacy Act derives its definition of the term "agency"). Thus, we do not believe that the federal courts' "state actor" analysis used to determine constitutional obligations is helpful in determining the scope of the statutory definition of "agency" under UIPA.

### 2. 'Ōlelo's position

'Ōlelo bases its position that it is not an agency within the purview of UIPA upon the following alternative grounds: (1) 'Ōlelo is not an agency based on the plain and unambiguous language of HRS § 92F–3 defining "agency"; (2) 'Ōlelo is not an agency under federal Freedom of Information Act precedent, and (3) OIP is estopped from contradicting admissions it made in *Morales v. Na Leo 'O Hawai'i Inc.*, No. 04–00107 (D.Haw. May 4, 2005) (unpublished).

For the reasons discussed below, we agree with 'Ōlelo that the language of HRS § 92F–3 defining "agency" is plain and unambiguous and that the application of the undisputed facts to the statutory definition establishes as a matter of law that 'Ōlelo is not an agency within the purview of UIPA.

### 3. Undisputed facts

The circuit court found that the following facts were not disputed:

1. 'Ōlelo is a private, nonprofit corporation.
2. 'Ōlelo is not supported directly by taxpayer funds. Rather, it gets its funds from the cable provider, Time Warner Cablevision, through access fees paid by viewers.
3. There is no government control over 'Ōlelo's activities. 'Ōlelo's Chief Executive Officer and staff run its day-to-day operations.
4. 'Ōlelo's employees are not State Employees.
5. 'Ōlelo has title to its equipment and leases, not the State.
6. 'Ōlelo's activities are not a required function of any government agency.

■ OIP did not challenge any of these findings of fact on appeal, and thus, we will consider them undisputed facts. *See Okada Trucking Co., Ltd. v. Bd. of Water Supply*, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002) ("Findings of fact ... that are not challenged

---

**6.** Pursuant to FOIA,

> "agency" as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

5 U.S.C. § 552(f) (2007).
Pursuant to 5 U.S.C. § 551(1), the Administrative Procedure Act,

> (1) "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include-
> (A) the Congress;
> (B) the courts of the United States;
> (C) the governments of the territories or possessions of the United States;

> (D) the government of the District of Columbia;
> or except as to the requirements of section 552 of this title—
> (E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;
> (F) courts martial and military commissions;
> (G) military authority exercised in the field in time of war or in occupied territory; or
> (H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; chapter 2 of title 41; subchapter II of chapter 471 of title 49; or sections 1884, 1891–1902, and former section 1641(b)(2), of title 50, appendix;

5 U.S.C. § 551(1)(2007).

on appeal are binding on the appellate court."); Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) (the opening brief must contain "[a] concise statement of the points of error set forth in separately numbered paragraphs.... Points not presented in accordance with this paragraph will be disregarded, except that the appellate court, at its option, may notice a plain error not presented."); HRAP Rule 28(b)(7) ("Points not argued [in the opening brief] may be deemed waived.").

### 4. The language of HRS § 92F–3 is plain and unambiguous.

■■■■■ As noted earlier, the dispute in this case concerns the statutory language of HRS § 92F–3 defining "agency" as a "corporation ... owned, operated, or managed by or on behalf of this State...." Pursuant to our rules of statutory construction, as we stated in a previous UIPA decision,

> our foremost obligation is to ascertain and give effect to the intention of the legislature[,] which is to be obtained primarily from the language of the statute itself. And where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning.

*Hawai'i Org. of Police Officers,* 83 Hawai'i at 402, 927 P.2d at 410 (citation omitted). As such, the court will attempt to construe the meaning of words in a statute according to their "general or popular use or meaning." HRS § 1–14 (1993).[7] If the words at issue are not defined in the statute, "we may rely upon extrinsic aids to determine [the legislature's] intent. Legal and lay dictionaries are extrinsic aids which may be helpful in discerning the meaning of statutory terms." *Singleton v. Liquor Comm'n, County of Hawai'i,* 111 Hawai'i 234, 243–44, 140 P.3d 1014, 1023–24 (2006)(quoting *Ling v. Yokoyama,* 91 Hawai'i 131, 133, 980 P.2d 1005, 1007 (App. 1999)).

It is within this context that we examine the statutory language in question: "a corporation ... owned, operated, or managed by or on behalf of this State."

#### a. 'Ōlelo is not "owned" by the State.

■■■■ The word "owned" is not defined in the definitions section of UIPA, HRS § 92F–3, and hence we will look to legal and lay dictionaries as extrinsic aids to determine its meaning. *Black's Law Dictionary* defines "own" as "[t]o have good legal title; to hold as property; to have a legal or rightful title to; to have; to possess." *Black's Law Dictionary* 1105 (6th ed.1990). *Webster's Third New International Dictionary* similarly defines "own" as "to have or hold as property or appurtenance: have a rightful title to, whether legal or natural." *Webster's Third New International Dictionary* 1612 (1993).

It is undisputed that 'Ōlelo is a nonprofit corporation which is the sole title owner of its equipment and the lessee of its offices and facilities. Although there are relinquishment provisions in the DCCA agreement regarding PEG fee accounts, facilities, and equipment acquired with PEG fees, the DCCA does not have any present rights in this property. Moreover, the relinquishment provisions do not include the intellectual property created by 'Ōlelo, which includes written materials, programming, trademarks, the company name, logo, website, and other non-tangible property created by 'Ōlelo; 'Ōlelo is the legal owner of these assets, not the State. Even if its agreement with the DCCA were terminated, 'Ōlelo would still have sole title to these assets and any other assets not acquired with PEG fees.

Under these facts, 'Ōlelo is not "owned" by the State.

#### b. 'Ōlelo is not "operated" by the State.

■■■■ The word "operated" is similarly not defined in UIPA. *Black's* defines "operate" as "[t]o perform a function, or operation, or produce an effect." *Black's Law Dictionary* at 1091. *Webster's* similarly defines "operate," as it relates to an entity, as "to manage

---

7. HRS § 1–14 states:
The words of a law are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning.

and put or keep in operation whether with personal effort or not." *Webster's Third New International Dictionary* at 1580–81.

The undisputed facts are that the State does not perform the function of providing PEG channel access and programming because it does not manage or control 'Ōlelo's day-to-day operations. *See infra* Section III. b.4.c. 'Ōlelo's CEO and staff perform all operating functions. Moreover, 'Ōlelo's employees are not State employees.

Under these facts, the State does not operate 'Ōlelo.

### c. 'Ōlelo is not "managed" by the State.

■■■ The word "managed" is also not defined in UIPA. *Black's* defines "manage" as

> [t]o control and direct, to administer, to take charge of. To conduct; to carry on the concerns of a business or establishment. Generally applied to affairs that are somewhat complicated and that involve skill and judgment.

Black's Law Dictionary at 960. *Webster's* defines "manage," as it relates to an entity, as "to direct or carry on business or affairs." *Webster's Third New International Dictionary* at 1372.

The undisputed facts are that the State does not control, direct, administer, take charge of, or exercise skill or judgment over 'Ōlelo's activities or business affairs. Against these undisputed facts, 'Ōlelo claims the State does manage or control 'Ōlelo to some extent through the DCCA's power to appoint a majority of 'Ōlelo's Board. This power, however, is mitigated by 'Ōlelo's corporate bylaws, which require Board involvement in the appointments. When a Board vacancy occurs, a nominating committee made up of board members must "develop a slate of individuals it recommends to fill Director vacancies and to serve as officers." *See* 'Ōlelo's By–Laws, § 6.9a. The Board must then "review the slate of Directors and forward its approved slate of Directors to the Director of the DCCA and the president of Oceanic. The Board shall recommend no less than two (2) members more than the number of vacancies." *Id.* Although the slate is technically "advisory," the record shows that, in reality,

the DCCA director traditionally, if not universally, makes the Board-member appointments from 'Ōlelo's slate of recommended appointees. Furthermore, with respect to OIP's claim that 'Ōlelo's mandatory reporting of financial and other activities to the DCCA demonstrates some control by the State, these reports appear to be intended to ensure compliance by 'Ōlelo with its contractual obligations to the State rather than to exert control over 'Ōlelo. *See Public Citizen Health Research Group v. Dept. of Health, Educ. & Welfare,* 668 F.2d 537, 544 (D.C.Cir. 1981) (finding that reports intended to ensure contract compliance were not sufficient indices of governmental control under the FOIA definition of "agency").

Under these facts, the State does not "manage" 'Ōlelo.

### d. 'Ōlelo is not "owned, operated, or managed . . . on behalf of" the State.

■■■ The prepositional phrase "on behalf of" is also not defined in UIPA. *Webster's* defines the phrase "on behalf of" as "in the interest of: *as the representative of:* for the benefit of." *Webster's Third New International Dictionary* at 198 (emphasis added). The definitional phrase most relevant to whether 'Ōlelo operates "on behalf of" the State is whether 'Ōlelo is a "representative of" the State. A "representative" is defined as an "agent, deputy, *substitute,* or delegate usually being invested with the authority of the principal." *Webster's Third New International Dictionary* at 1926–27 (emphasis added). It would thus appear that an entity is a representative of the State when it substitutes for the state in the performance of a governmental function.

The circuit court found that "'Ōlelo's activities are not a required function of any government agency." This fact, not appealed, is consistent with OIP's own view, stated in its pre–2002 opinion letters, that PEG organizations were not agencies under UIPA. In one such letter, OIP opined that, "[a]lthough we believe that Akaku [the Maui PEG organization], by providing community broadcasting on Maui, is providing a service that benefits the public interest, we do not believe it is performing a governmental function." OIP

Op. Ltr. No. 93–18, 4. In another letter, OIP concluded that "because providing 'community' broadcasting is not a required function of any government agency, we do not believe that Na Leo [the Island of Hawai'i's PEG facilitator] performs a governmental function." OIP Op. Ltr. No. 94–23, 2.

Moreover, the record shows that the DCCA director purposely created PEG facilitators, such as 'Ōlelo, with the intention that PEG facilitators would operate "separately and independently from the State." In fact, during 'Ōlelo's formation,

> There were explicit discussions about how to form 'Ōlelo in a way that would separate it from the State so that it would be able to operate as an independent, private non-profit community based organization. We did not want 'Ōlelo to be "an arm of the State" or be perceived as taking "State action."

Under these facts, 'Ōlelo does not perform a government function "on behalf of" the State.

## IV. CONCLUSION

Based upon the plain and unambiguous language of HRS § 92F–3 defining "agency," the undisputed facts, and the record before us, 'Ōlelo is not an agency within the purview of UIPA.[8] We affirm the circuit court's judgment.

---

8. Having so held, we need not consider the alter- native arguments raised by 'Ōlelo.