948 P.2d 122

The KAHANA SUNSET OWNERS AS-
SOCIATION and Glenn J. Quig-
ley, Plaintiffs–Appellants,

v.

The MAUI COUNTY COUNCIL; Goro Ho-
kama, in his capacity as Chairperson of
the Maui County Council; Linda Crock-
ett Lingle, in her capacity as the Mayor
of Maui County, and JGL Enterprises,
Inc., Defendants–Appellees.

No. 19217.

Supreme Court of Hawai'i.

Oct. 31, 1997.

Reconsideration Denied Dec. 2, 1997.

William H. Dodd and Trudy Burns Stone
of Chun, Kerr, Dodd, Beaman & Wong, Hon-
olulu, and B. Martin Luna and Randall H.
Endo of Carlsmith, Wailuku, on the request,
for defendants-appellees JGL Enterprises,
Inc.

Isaac Hall, Wailuku, for plaintiffs-appel-
lants.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Defendants-appellees JGL Enterprises, Inc. (JGL), Maui County Council (Council), Goro Hokama, Chairperson of the Maui County Council, and Linda Crockett Lingle, Mayor of Maui County,[1] prevailed in Supreme Court No. 19217, which affirmed the circuit court's summary judgment in favor of JGL and the County Defendants against plaintiffs-appellants Kahana Sunset Owners Association (KSOA) and Glenn J. Quigley. JGL now requests attorneys' fees as the prevailing party pursuant to Hawai'i Revised Statutes (HRS) §§ 92–12(c) (1993) and 607–25(e) (Supp.1996).[2] We deny JGL's request for attorneys' fees.

## I. BACKGROUND

This case arose out of a rezoning application submitted by JGL to the Council. The Council approved the rezoning application, and it was signed into law as Ordinance 2317 by Mayor Lingle.

KSOA and Quigley filed a three-count complaint against JGL and the County Defendants in the circuit court. The circuit court granted JGL and the County Defendants' motion for summary judgment on all three counts in two orders filed June 28 and July 31, 1995. Judgment was entered on August 4, 1995.

On appeal, KSOA and Quigley argued that the circuit court erred in granting JGL's and the County Defendants' motion for summary judgment, alleging as points of error: (1) the conditions imposed by the Council in Ordinance 2317 were insufficient to protect the public from the effects of the rezoning; (2) by law, the Council was required to provide findings of fact and conclusions of law in support of Ordinance 2317; and (3) the Council violated HRS § 92–3 (1993) when it did not allow Quigley to speak at the March 18, 1994 Council meeting because he failed to comply with Maui Council Rule (Council Rule) § 17.B.1. We affirmed the circuit court's decisions in a summary disposition order filed August 12, 1997.

JGL timely filed a request for attorneys' fees on September 9, 1997. JGL requested attorneys' fees pursuant to HRS §§ 92–12(c) and 607–25(e).

## II. DISCUSSION

### A. ATTORNEYS' FEES UNDER HRS § 607–25 ARE NOT WARRANTED

HRS § 607–25 provides in pertinent part:

(e) In any civil action in this State where a private party sues for injunctive relief against another private party who has been or is undertaking any development without obtaining all permits or approvals required by law from government agencies:

(1) The court may award reasonable attorneys' fees and costs of the suit to the prevailing party.

HRS § 607–25(c) provides in pertinent part that, "[f]or purposes of this section, the permits or approvals required by law shall include compliance with the requirements for permits or approvals established by chapters ... 46 [inter alia] ... and ordinances or rules adopted pursuant thereto under chapter 91."

HRS Chapter 46 grants various powers to the county governments; HRS § 46–4 in particular provides for county zoning measures. The change in zoning ordinance approved by the Council, which was the basis of the first two points of error of KSOA and Quigley's appeal, is enabled by HRS Chapter 46.

HRS Chapter 91 provides for the adoption of administrative rules and procedures by governmental agencies. The rules and procedures that KSOA and Quigley alleged the Council failed to follow are enabled by Chapter 91.

---

1. Collectively, the Council, Hokama, and Mayor Lingle will be referred to as "County Defendants" in this opinion.

2. HRS § 607–25 has been amended several times since it was enacted in 1986. However, the amendments do not affect the application of the statute to this case.

**134**

■ There appear to be no reported Hawai'i cases applying HRS § 607–25. In interpreting statutes, we have noted that

> our primary duty in interpreting and applying statutes is to ascertain and give effect to the legislature's intention to the fullest degree. Although the intention of the legislature is to be obtained primarily from the language of the statute itself, we have rejected an approach to statutory construction which limits us to the words of a statute, for when aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination. *Thus, the plain language rule of statutory construction, does not preclude an examination of sources other than the language of the statute itself even when the language appears clear upon perfunctory review. Were this not the case, a court may be unable to adequately discern the underlying policy which the legislature seeks to promulgate* and, thus, would be unable to determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute.

*Crompton v. Tern Corp.*, 83 Hawai'i 1, 6, 924 P.2d 169, 175 (1996) (*quoting Sato v. Tawata,* 79 Hawai'i 14, 17, 897 P.2d 941, 944 (1995) (citations, brackets, quotation marks, and ellipses omitted.)) (emphasis added). Additionally, "in determining the purpose of the statute, we are not limited to the words of the statute to discern the underlying policy which the legislature seeks to promulgate but may look to relevant legislative history." *Housing Finance and Development Corp. v. Takabuki,* 82 Hawai'i 172, 180, 921 P.2d 92, 100 (1996) (citation omitted).

HRS § 607–25 was enacted by the 1986 State Legislature as Act 80. Act 80, § 1, explained the purpose of the statute as follows:

> The legislature finds that article XI, section 9, of the Constitution of the State of [Hawai'i] has given the public standing to use the courts to enforce laws intended to protect the environment. However, the legislature finds that the public has rarely used this right and that there have been increasing numbers of after-the-fact permits for illegal private development. Although the legislature notes that some government agencies are having difficulty with the full and timely enforcement of permit requirements against private parties, after-the-fact permits are not a desirable form of permit streamlining. *For these reasons, the legislature concludes that to improve the implementation of laws to protect health, environmental quality, and natural resources, the impediment of high legal costs must be reduced for public interest groups by allowing the award of attorneys' fees, in cases involving illegal development by private parties.*

(Emphasis added.)

Additionally, the legislative history stated:

> Your Committee find[s] that the volume of development throughout the State is a limiting factor on State or County investigation of alleged abuses against public resources and the environment. . . .
>
> The bill will give fuller effect to Article XI, Section 9 of the Constitution of the State of [Hawai'i], which gives Hawaii's people the right to bring lawsuits enforcing environmental laws.
>
> *Members of the public interested in using their constitutional standing may be deterred by the high cost of litigation. Awarding attorney's fees and costs will enable individuals and organizations to assist the state in enforcing laws and ordinances controlling development.* They are to be awarded costs if they prevail after fruitlessly bringing the violation to the attention of those undertaking the development and the relevant state agency.
>
> *This bill will help assure that the state honors the commitment to its environment that is reflected in its laws concerning development.*

Sen. Stand. Comm. Rep. No. 450–86, in 1986 Senate Journal, at 976 (emphasis added).

From the legislative history, we are able to determine that the legislature intended that individuals and organizations would help the state's enforcement of laws and ordinances controlling development by acting as private

attorneys general and suing developers who did not comply with the proper development laws. To encourage individuals and organizations to enforce the law, the legislature allowed the individual or organization to recover attorneys' fees if it prevailed in its lawsuit.

However, the legislature did not intend this statute to be utilized in awarding attorneys' fees only to public-interest groups acting as plaintiffs. The legislative history also stated that "the high cost of civil procedure places substantial burdens upon parties involved in such cases. *The award of attorney's fees to the prevailing party in such a suit would discourage frivolous actions by a plaintiff* and intentional abuses by a potential defendant." Sen. Stand. Comm. Rep. No. 450–86, in 1986 Senate Journal, at 976; Hse. Stand. Comm. Rep. No. 766–86, in 1986 House Journal, at 1373 (emphasis added).

■ Therefore, under HRS § 607–25, the two types of parties who may be awarded attorneys' fees are: (1) a member of the public who prevails against a private party who has been or is undertaking development without obtaining all permits or approvals required by law from government agencies; and (2) a defendant private party who prevails against a plaintiff who has brought a frivolous action.

■ In this case, JGL, the defendant private party, prevailed against the plaintiffs, KSOA and Quigley. However, on appeal, KSOA and Quigley raised valid arguments. The first point of error required us to examine whether the conditions imposed by the Council in Ordinance 2317 were adequate to protect the public from the effects of the rezoning. The second point of error was an argument for a good-faith extension of the law, because although findings of fact and conclusions of law were not required by law for the approval of a rezoning application, they were required by law for approval of variance, special use, and Special Management Area applications. Although we did not agree with the contentions and argu-

ments of KSOA and Quigley, they were certainly worthy of review.

Therefore, because KSOA and Quigley's claims were not frivolous, attorneys' fees are not warranted under HRS § 607–25.[3]

## B. *ATTORNEYS' FEES ARE NOT WARRANTED UNDER HRS § 92–12*

■ The purpose of HRS Chapter 92, the Hawai'i "sunshine law," is to "[open] up the governmental processes to public scrutiny and participation," and to ensure that "the formation and conduct of public policy—the discussions, deliberations, decisions and actions of governmental agencies—shall be conducted as openly as possible." HRS § 92–1 (1993). The third point of error of KSOA and Quigley's appeal alleged violations of the sunshine law.

HRS § 92–12(c) provides for the award of attorneys' fees to the prevailing party in actions brought under the sunshine law:

> Any person may commence a suit in the circuit court of the circuit in which a prohibited act occurs for the purpose of requiring compliance with or preventing violations of this part or to determine the applicability of this part to discussions or decisions of the public body. *The court may order payment of reasonable attorney fees and costs to the prevailing party in a suit brought under this section.*

(Emphasis added.)

There appear to be no reported Hawai'i cases applying HRS § 92–12(c) with respect to the awarding of attorneys' fees.

The legislative history of HRS § 92–12(c) indicates that it was the intent of the legislature to award citizens their attorneys' fees when they prevailed on sunshine law violation challenges:

> This bill also provides a mandatory requirement to allow all interested parties the opportunity to submit testimony to a board on any agenda item. Under this bill, the Attorney General and the Prosecuting Attorney are directed to investigate

---

3. We reject KSOA and Quigley's request for attorneys' fees against JGL as a Hawai'i Rules of Civil Procedure (HRCP) Rule 11 sanction be-

cause we disagree with KSOA and Quigley's argument that HRS § 607–25 is not applicable to this case.

citizen's complaints. *It also provides relief to citizens denied their rights under this Chapter by allowing them to pursue their claims directly in the Courts, and allows the Courts to award those citizens attorneys' fees and costs when their claims of violations under this Chapter are sustained.*

Hse. Stand. Comm. Rep. No. 745, in 1985 House Journal, at 1349. The legislative history did not state that the purpose of awarding the prevailing party attorneys' fees was to deter frivolous claims by plaintiffs.

██ Additionally, the purpose of the sunshine law "was to provide that discussion, deliberations, decisions, and actions of *governmental agencies* should be conducted as openly as possible and not in secret." Hse. Stand. Comm. Rep. No. 889, in 1985 House Journal, at 1424 (emphasis added). Thus, it was to ensure that the government process was open to the public. If there was a violation of the sunshine law, the citizen would bring suit against the government, in this case, the County Defendants, and not JGL, a private party defendant. JGL was not a defendant in connection with KSOA and Quigley's sunshine law violation claim because JGL's actions and participation in the permit process had nothing to do with Council Rule § 17.B.1 regarding oral testimony. JGL did not hinder KSOA or Quigley's participation in the government process. Therefore, JGL is not entitled to attorneys' fees as the prevailing party under HRS § 92–12(c).[4]

### III. *CONCLUSION*

For the foregoing reasons, we deny JGL's request for attorneys' fees under HRS §§ 92–12(c) and 607–625.

---

4. Even if we held that JGL was the prevailing party under HRS § 92–12(c), we would still deny JGL's request for attorneys' fees. The main purpose behind HRS § 92–12(c) was to encourage citizens to pursue claims of violations of the sunshine law, and an award of attorneys' fees against a citizen who challenged a sunshine law violation and lost would have a "chilling effect" and deter citizens from filing HRS § 92–12(c) suits in the future.