175 P.3d 111

RIGHT TO KNOW COMMITTEE, a Hawai'i non-profit corporation; League of Women Voters of Hawai'i, a Hawai'i non-profit corporation; Society of Professional Journalists, Hawaii Chapter, an Indiana not-for-profit corporation; University of Hawaii Chapter of the Society of Professional Journalists, an Indiana not-for-profit corporation; Big Island Press Club, Inc., a Hawai'i non-profit corporation; Hawai'i Political Reform Project, dba Hawaii Pro–Democracy Initiative, a Hawai'i non-profit corporation; Citizen Voice, a Hawai'i non-profit corporation; and Honolulu Community Media Council, a Hawai'i non-profit corporation, Plaintiffs/Appellees/Cross–Appellants,

and

State of Hawaii, Intervenor–As–A–Plaintiff/Appellee/Cross–Appellee

v.

CITY COUNCIL, CITY AND COUNTY OF HONOLULU; Donovan M. Dela Cruz, Todd K. Apo, Barbara Marshall, Charles K. Djou, Ann H. Kobayashi, Rod Tam, Romy M. Cachola, Gary H. Okino, and Nester R. Garcia, in their official capacities as members of the Honolulu City Council, Defendants/Appellants/Cross–Appellees.

No. 27996.

Intermediate Court of Appeals of Hawai'i.

Dec. 28, 2007.

As Corrected Feb. 15, 2008.

Don S. Kitaoka, Deputy Corporation Counsel (Carrie K.S. Okinaga, Corporation Counsel; Reid M. Yamashiro and Derek T. Mayeshiro, Deputies Corporation Counsel, with him on the briefs), for Defendants/Appellants/Cross–Appellees.

Elijah Yip (Jeffrey S. Portnoy with him on the briefs) (Cades Schutte LLP), Honolulu, for Plaintiffs/Appellees/Cross–Appellants.

RECKTENWALD, C.J., FOLEY and NAKAMURA, JJ.

Opinion of the Court by FOLEY, J.

Defendants/Appellants/Cross–Appellees the City Council of the City and County of Honolulu (Council) and Donovan M. Dela Cruz, Todd K. Apo, Barbara Marshall, Charles K. Djou, Ann H. Kobayashi, Rod Tam, Romy M. Cachola, Gary H. Okino, and Nester R. Garcia, in their official capacities as members of the Honolulu City Council, (hereinafter, Council and the individual defendants are collectively referred to as Defendants) appeal [1] from the Final Judgment entered on May 26, 2006 in the Circuit Court of the First Circuit (circuit court).[2]

Plaintiffs/Appellees/Cross–Appellants Right To Know Committee; League of Women Voters of Hawai'i; Society of Professional Journalists, Hawaii Chapter; University of Hawaii Chapter of the Society of Professional Journalists; Big Island Press Club, Inc.; Hawaii Political Reform Project; Citizen Voice; and Honolulu Community Media Council (hereinafter collectively referred to as Plaintiffs) cross-appeal as to the amount of attorney's fees awarded.

The circuit court entered judgment in favor of Plaintiffs and against Defendants as to Count I of Plaintiffs' Complaint; dismissed, without prejudice, Count II as moot; and awarded attorney's fees in favor of the Society of Professional Journalists, Hawaii Chapter, and against Defendants, jointly and severally, on Counts I and III of the Complaint.

I.

On July 7, 2005, seven Council members introduced Resolution 05–243, which sought to reorganize the Council's standing committees. The adoption of Resolution 05–243 was the subject of a special Council meeting scheduled for July 13, 2005. On July 8, 2005, Honolulu newspapers reported that Council members had already discussed the reorganization of the Council's standing committees before the scheduled meeting.

In a July 12, 2005 letter to Council Chair Donovan M. Dela Cruz (Dela Cruz) from Leslie H. Kondo (Kondo), Director of the Office of Information Practices (OIP), the OIP questioned the validity of Resolution 05–243 [3]:

We understand that the City Council intends to consider Resolution No. 05–243 as part of a Special Meeting of the City Council scheduled for Wednesday, July 13. The Resolution was introduced by seven council members apparently for the purpose of reorganizing the Council's standing committees. We have been informed by your office that reorganization of the standing committees requires approval by a majority of the council members. Thus,

1. The Opening Brief· of Defendants/Appellants/Cross–Appellees the City Council of the City and County of Honolulu (Council) and Donovan M. Dela Cruz, Todd K. Apo, Barbara Marshall, Charles K. Djou, Ann H. Kobayashi, Rod Tam, Romy M. Cachola, Gary H. Okino, and Nester R. Garcia (Council and the individual defendants are collectively referred to as Defendants) fails to comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) in that each point of error does not state "(ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency." Defendants' counsel is warned that future non-compliance with HRAP 28(b)(4) may result in sanctions against counsel.

2. The Honorable Eden Elizabeth Hifo presided.

3. Hawaii Revised Statutes (HRS) § 92–1.5 (Supp.2006) of HRS Chapter 92 (Public Agency Meetings and Records—commonly known as the Sunshine Law) provides in part:

§ 92–1.5 **Administration of this part.** The director of the office of information practices shall administer this part [HRS Chapter 92]. The director shall establish procedures for filing and responding to complaints.filed by any person concerning the failure of any board to comply with this part.

the reorganization of the standing committees is "council business," i.e., a matter over which the Council has supervision, control, jurisdiction, or advisory power. Assuming that to be the case, the Sunshine Law requires you and the other council members to discuss any specifics about the reorganization of the standing committees only as part of a properly noticed meeting unless there is a permitted interaction that allows the council members to discuss the matter privately.

First, it is our understanding that you may have discussed this reorganization in a series of one-on-one meetings with more than three other council members. . . . A . . . permitted interaction allows two council members to privately discuss council business, but under this permitted interaction those two council members may not then discuss the same council business with any other council member outside of a meeting. *See* [Hawaii Revised Statutes (HRS) § 92–2.5]. Accordingly, if you specifically discussed the reorganization with more than three other council members outside of a meeting, your discussions with those members should have occurred in a meeting open to the public and not through a series of private conversations. *See* OIP Op. Ltr. No. 04–01.

Second, the manner in which the Resolution was introduced appears to be contrary to the Sunshine Law's purpose of protecting the public's right to participate in and to scrutinize the Council's business. Consistent with this statutory intent, we interpret the Sunshine Law to prohibit council members outside of a meeting from polling other members to gauge support for a matter that is council business and/or from committing to vote to support or to oppose a matter that the Council is considering or is reasonably likely to consider. *See id.*

The fact that the Resolution was introduced by you and six other council members suggests that you and the other council members discussed the Resolution before it was introduced, which, as discussed above, would be a violation of the Sunshine Law. Even if no discussions occurred, it appears at a minimum that one council member authored the Resolution and requested other council members to co-introduce the Resolution. . . . At a minimum, by asking whether other council members were willing to co-introduce the Resolution, the initiating council member essentially "polled" the other council members as to their preliminary inclinations regarding the proposed reorganization of the standing committees. The statute clearly does not allow council members to decide council business, even if the decision is preliminary and subject to change, outside of a properly noticed meeting.

The special meeting was held as scheduled, and by a vote of eight to one the Council adopted Resolution 05–243.

In a July 19, 2005 letter from Dela Cruz to Kondo, Dela Cruz asked the OIP to review a memorandum prepared by the Office of Council Services "summarizing the case law in other jurisdictions wherein the courts have determined that serial communications are not *per se* prohibited by the applicable 'open meeting' law" and to reconsider OIP's position "that such communications violate Hawai'i's 'opening meeting' law, [Hawaii Revised Statutes (HRS)] Chapter 92" (HRS Chapter 92 is also referred to as the Sunshine Law).

On July 22, 2005, Dela Cruz introduced Resolution 05–260 to amend Council Rules to authorize the Council Chair to appoint all committees and, thus, dispense with the reorganization of Council standing committees through resolution. Resolution 05–260 was amended by Resolution 05–260 CD1, which limited the chair's powers to the appointment of standing committees only.

In a report dated July 28, 2005, the Council's Executive Matters and Legal Affairs Committee explained that the impetus for Resolution 05–260 CD1 was "to take the reorganization of standing committees outside the purview of the [S]unshine [L]aw."

On August 4, 2005, the OIP responded to Dela Cruz with a formal opinion letter, OIP Op. Ltr. No. 05–015, in which the OIP stated that it had not changed its position:

While the Sunshine Law allows two council members to discuss council business between themselves, the statute does not

permit either of those council members to then discuss the same council business with any other council members outside of a properly noticed meeting. Such serial communication is contrary to the letter, the intent and the spirit of the statute.

Resolution 05–260 CD1 was adopted by the Council on August 10, 2005. On September 15, 2005, pursuant to his new appointment powers vested in Resolution 05–260 CD1, Dela Cruz reorganized the standing committees. The committees and committee members were the same as those previously set forth in Resolution 05–243.

On October 3, 2005, Plaintiffs filed their Complaint against Defendants. Paragraph 40 of the Complaint (Paragraph 40) described the Council's legal interpretation of the Sunshine Law:

> 40. Upon information and belief, the Council presently takes the position that the practice of engaging in serial one-on-one communications among Council members regarding a particular Council business is not a violation of the Open Meeting Requirements of the Sunshine Law.

In Count I, Plaintiffs alleged that the one-on-one conversations regarding Resolution 05–243 were in violation of the "Open Meeting Requirements of the Sunshine Law" within the meaning of HRS § 92–2(3) (1993). In Count II, Plaintiffs alleged that because the conversations were in violation of the Sunshine Law, Resolution 05–243 was voidable. Plaintiffs alleged in Count III that pursuant to HRS § 92–12 (1993), they were entitled to reasonable attorney's fees and costs. In their prayer for relief Plaintiffs sought, among other things,

> [a] declaratory judgment that Defendants' use of a series of private, one-on-one communications to reach consensus among a majority of Council members regarding reorganization of the Council's standing committees or any other matter over which the Council has supervision, control, jurisdiction, or advisory power is a violation of HRS [C]hapter 92.

Defendants filed a motion to dismiss the Complaint on October 24, 2005 (First Motion to Dismiss). The thrust of Defendants' argument was that the newly adopted appointment powers of the Council Chair mooted the dispute surrounding Resolution 05–243.

On November 28, 2005, the State of Hawai'i (the State) filed its Motion to Intervene as a Plaintiff because two state officials, the OIP Director and the State of Hawai'i Attorney General, were "directly responsible for administering and enforcing the Sunshine Law's provisions." The circuit court granted the State's motion on December 8, 2005.

Plaintiffs filed a Motion for Summary Judgment on December 5, 2005. Plaintiffs asserted that the Council's interpretation of HRS Chapter 92 was erroneous; Council members were precluded from having serial one-to-one communications; and Plaintiffs should be awarded their attorney's fees and costs.

The State filed its Complaint–in–Intervention on December 14, 2005. The State asked the circuit court to reject Defendants' mootness defense; reject Defendants' interpretation of HRS § 92–2.5(a) (Supp.2006), pertaining to one-to-one communications; and construe and interpret HRS § 92–2.5(a) in accordance with law.

At the December 16, 2005 hearing on Defendants' First Motion to Dismiss, Defendants argued that there was no actual controversy and thus Plaintiffs' prayer for declaratory judgment must fail. Defendants asserted that Paragraph 40 of Plaintiff's Complaint was not a factual allegation and that Plaintiffs and the State were "seeking an advisory opinion because they want this court to issue a comprehensive ruling on their interpretation of permitting interactions under HRS [§ ] 92–2.5(a)." Plaintiffs countered that the issues were not moot because Defendants' actions were "going to be repeated" and were "matters of the public interest."

The circuit court ruled from the bench:

I agree with the City that the issue is moot. And I disagree ... that its [sic] capable of retention evading review as to the precise point of the selection of board officers, ... that being Resolution 05243 adopted on July 12, '05, because by rule amended July 28, 2005 in Resolution

05260CD1, the chair was unilaterally empowered to appoint all standing committees and their officers.

... It wasn't until October 2005 that the suit was filed, by then that issue was moot, but by then they had incorporated paragraph 40 as well as the preliminary allegations and the facts that led to what is now in evidence as Exhibit 5 [the OIP letter to Dela Cruz dated August 4, 2005].

And, therefore, I believe that the remainder of the complaint is not moot, it remains a continuing controversy perceived in the complaint and by the plaintiffs to date to be a point of view that the Council may not actually have but still deserves to be litigated, that each and every form of business which is acknowledged to be under the rule can allow a serial communication.

On January 6, 2006, Plaintiffs amended their Motion for Summary Judgment to reflect the circuit court's ruling from the bench that the only remaining issue pertained to Defendants' interpretation of the Sunshine Law. The State filed a joinder in Plaintiffs' Motion for Summary Judgment.

Defendants filed a second motion to dismiss the Complaint (Second Motion to Dismiss) on January 12, 2006 on the grounds that the circuit court lacked subject matter jurisdiction because Plaintiffs did not meet the elements of HRS § 92–12(c) (1993) and Plaintiffs lacked standing because they failed to allege an actual or threatened injury regarding Defendants' position on the Sunshine Law. Defendants argued that the "fact that [Defendants have] a position regarding the Sunshine Law does not provide the [circuit court with] jurisdiction over Plaintiffs' claim regarding [Defendants'] position regarding the Sunshine Law." On January 18, 2006, Defendants filed a motion to dismiss the State's Complaint–in–Intervention for similar reasons.

On January 24, 2006, the circuit court issued its order granting in part and denying in part Defendants' First Motion to Dismiss. The circuit court concluded that Defendants' "actions relating to Resolution No. 05–243, which set forth the Council's current committee structure, and subsequent actions relating to the Council's selection of its standing committees and committee officers are moot." The circuit court denied the motion "to the extent that there is a continuing controversy as set forth in paragraph 40 of the Complaint and [the OIP letter to Dela Cruz dated August 4, 2005]."

On February 17, 2006, the circuit court granted Plaintiffs' amended Motion for Summary Judgment, holding that HRS § 92–2.5 (Supp.2006) did not permit Council members to engage in serial communications regarding matters of Council business except to the extent allowed under HRS § 92–2.5(b) and (c) (Supp.2006).

All parties stipulated on March 6, 2006 to the dismissal of the State's Complaint–in–Intervention.

On March 13, 2006, Plaintiffs filed a motion for attorney's fees and costs, in which Plaintiffs sought $41,353.14 in fees and $1,378.60 in costs. Defendants opposed the motion. On April 17, 2006, the circuit court awarded Plaintiffs their costs in full, but as to the requested attorney's fees, the court found that

> Plaintiffs are awarded $10,338.29 in attorney's fees. The Court finds the hourly rate of Plaintiffs' counsel and the number of hours expended reasonable. However, the work performed by Plaintiffs' counsel is divisible between the moot issues and those litigated to judgment, the latter being approximately twenty-five percent (25%) of the total amount of work performed. Thus, Plaintiffs are awarded twenty-five percent (25%) of their total fees, or $10,338.29.

On April 20, 2006, the circuit court denied Defendants' Second Motion to Dismiss. The circuit court, on May 26, 2006, entered its Final Judgment, which declared in part that "HRS § 92–2.5 does not permit members of the Honolulu City Council to engage in serial communications regarding matters of Council business except to the extent allowed under subsections (b) or (c) of HRS § 92–2.5." Defendants and Plaintiffs timely filed their respective notice of appeal and notice of cross-appeal.

## II.

On appeal, Defendants contend the circuit court erred

(1) in not granting in full, pursuant to the mootness doctrine, their First Motion to Dismiss;

(2) in denying their Second Motion to Dismiss because Plaintiffs lacked standing; and

(3) in granting Plaintiffs' Motion for Summary Judgment because the Council members were permitted to engage in one-on-one communications as a matter of law.

On cross-appeal, Plaintiffs contend the circuit court

(1) erred in failing to apply the proper analysis in examining Plaintiffs' request for attorney's fees and

(2) abused its discretion in refusing to award attorney's fees for issues that were rendered moot through the affirmative actions of Defendants.

## III.

### A. Motions to Dismiss for Lack of Jurisdiction

■ A trial court's grant or denial of a motion to dismiss for "lack of subject matter jurisdiction is a question of law, reviewable de novo." *Norris v. Hawaiian Airlines, Inc.*, 74 Haw. 235, 239, 842 P.2d 634, 637 (1992), *aff'd*, *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). In *Norris*, the Hawai'i Supreme Court adopted the view of the Ninth Circuit Court of Appeals in *Love v. United States*, 871 F.2d 1488, 1491 (9th Cir.1989), *opinion amended on other grounds and superseded by Love v. United States*, 915 F.2d 1242 (9th Cir.1989), that:

> review of a motion to dismiss for lack of subject matter jurisdiction is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff. Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Norris*, 74 Haw. at 240, 842 P.2d at 637 (internal quotation marks, citation, and brackets omitted.) "However, when considering a motion to dismiss pursuant to [Hawai'i Rules of Civil Procedure] Rule 12(b)(1) the trial court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *Norris*, 74 Haw. at 240, 842 P.2d at 637 (internal quotation marks, citation, and brackets in original omitted; bracketed material added).

### B. Standing

■ "Whether the circuit court has jurisdiction to hear the plaintiffs' complaint presents a question of law, reviewable de novo. A plaintiff without standing is not entitled to invoke a court's jurisdiction. Thus, the issue of standing is reviewed de novo on appeal." *Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc.*, 113 Hawai'i 77, 90, 148 P.3d 1179, 1192 (2006) (quoting *Mottl v. Miyahira*, 95 Hawai'i 381, 388, 23 P.3d 716, 723 (2001)).

### C. Motion for Summary Judgment

We review the circuit court's grant or denial of summary judgment de novo. *Hawai'i C[m]ty[.] Fed[.] Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Zane v. Liberty Mut. Fire Ins. Co.*, 115 Hawai'i 60, 72–73, 165 P.3d 961, 973–74 (2007) (quoting *Querubin v. Thronas*, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005)).

### D. Attorney's Fees and Costs

■ The grant and/or denial of attorney's fees is reviewed by this court for an abuse of discretion. *Maui Tomorrow v. State of Hawai'i, Bd. of Land & Natural Res.*, 110 Hawai'i 234, 242, 131 P.3d 517, 525 (2006). Abuse of discretion arises when the trial court "bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. In other words, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Id.* (internal quotation marks, citations, and brackets omitted).

### IV.

### A. The circuit court did not err in partially denying Defendants' First Motion to Dismiss.

■ The Hawai'i Supreme Court has required a case to remain continually viable to avoid mootness:

A case is moot if it has lost its character as a present, live controversy of the kind that must exist if courts are to avoid advisory opinions on abstract propositions of law. The rule is one of the prudential rules of judicial self-governance founded in concern about the proper—and properly limited—role of the courts in a democratic society. We have said the suit must remain alive throughout the course of litiga-

tion to the moment of final appellate disposition to escape the mootness bar.

*Kemp v. State of Hawai'i Child Support Enforcement Agency*, 111 Hawai'i 367, 385, 141 P.3d 1014, 1032 (2006) (quoting *Kona Old Hawaiian Trails Group v. Lyman*, 69 Haw. 81, 87, 734 P.2d 161, 165 (1987)).

■ The Hawai'i Supreme Court has articulated the mootness doctrine in more concrete terms, stating that

[a] case is moot where the question to be determined is abstract and does not rest on existing facts or rights. Thus, the mootness doctrine is properly invoked where "events . . . have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised."

*Carl Corp. v. State, Dept. Of Educ.*, 93 Hawai'i 155, 164, 997 P.2d 567, 576 (2000) [hereinafter, "CARL II"] (quoting *In re Application of Thomas*, 73 Haw. 223, 226, 832 P.2d 253, 254 (1992) (quoting *Wong v. Bd. of Regents, University of Hawai'i*, 62 Haw. 391, 394, 616 P.2d 201, 203–04 (1980))).

*Okada Trucking Co., Ltd. v. Bd. of Water Supply*, 99 Hawai'i 191, 195–96, 53 P.3d 799, 803–04 (2002).[4]

Defendants contend the circuit court's dismissal of claims relating to Resolution 05–243 mooted the remaining allegation that the practice of serial one-on-one communications violated the Sunshine Law. Defendants argue that without addressing the challenges to Resolution 05–243, "the circuit court, by entertaining [Plaintiffs'] arguments in the [Mo-

---

4. Hawai'i appellate courts have employed the two-pronged standard, which originated in *Wong v. Board of Regents, University of Hawaii*, 62 Haw. 391, 616 P.2d 201 (1980), more extensively. *See Diamond v. State of Hawai'i, Bd. of Land and Natural Res.*, 112 Hawai'i 161, 145 P.3d 704 (2006); *Lathrop v. Sakatani*, 111 Hawai'i 307, 141 P.3d 480 (2006); *City and County of Honolulu v. Hsiung*, 109 Hawai'i 159, 180, 124 P.3d 434, 455 (2005); *Hac v. Univ. of Hawai'i*, 102 Hawai'i 92, 99–100, 73 P.3d 46, 53–54 (2003); *McCabe, Hamilton & Renny Co., Ltd. v. Chung*, 98 Hawai'i 107, 116, 43 P.3d 244, 253 (App. 2002) (referring to the two-pronged standard as "well established"); *In re Doe Children*, 105 Ha-

wai'i 38, 56–58, 93 P.3d 1145, 1163–65 (2004); *AIG Hawai'i Ins. Co. v. Bateman*, 82 Hawai'i 453, 458–59, 923 P.2d 395, 400–01 (1996); *Exit Co. Ltd. P'ship v. Airlines Capital Corp., Inc.*, 7 Haw. App. 363, 766 P.2d 129 (1988).

The two formulations of the mootness doctrine are not mutually exclusive and can be read together. For example, in *Mahiai v. Suwa*, 69 Haw. 349, 354–55, 742 P.2d 359, 365 (1987), the Hawai'i Supreme Court uses both the two-prong approach in *Wong* and the formulation in *Kona Old Hawaiian Trails Group v. Lyman*, 69 Haw. 81, 87, 734 P.2d 161, 165 (1987), to articulate the mootness doctrine.

tion for Summary Judgment] Order issued an advisory opinion in a factual vacuum."

Lawsuits alleging violations of the Sunshine Law are authorized by HRS § 92–12:

### § 92–12 Enforcement.

. . . .

(c) Any person may commence a suit in the circuit court of the circuit in which a prohibited act occurs for the purpose of requiring compliance with or preventing violations of this part or to determine the applicability of this part to discussions or decisions of the public body. The court may order payment of reasonable attorney fees and costs to the prevailing party in a suit brought under this section.

In other words, HRS § 92–12(c) authorizes circuit courts to compel a public body to comply with the Sunshine Law, prevent a public body from violating the Sunshine Law in the future, or determine whether the Sunshine Law applies to the "discussions or decisions of the public body" so long as the claimant brings the suit in the circuit where "a prohibited act occurs."

██ In this case, Plaintiffs alleged in part that Defendants violated the Sunshine Law while deliberating Resolution 05–243. Plaintiffs also alleged that Defendants' practice of having one-on-one conversations (as exemplified while deliberating Resolution 05–243) violated the Sunshine Law. Based on the occurrence of this "prohibited act," Plaintiffs asked the circuit court to determine the applicability of HRS § 92–2.5(a) to future discussions and deliberations of the public body involving the same practice. While the specific substantive issue was unlikely to occur again, the circuit court correctly found that the practice was likely to reoccur. The circuit court, therefore, did not err in hearing Plaintiffs' suit as to the allegations that Defendants' conduct relating to Resolution 05–243 violated the Sunshine Law, since several exceptions to the mootness doctrine apply here.

██ A public-interest exception to the mootness doctrine arises "[w]hen the question involved affects the public interest[ ] and it is likely in the nature of things that similar questions arising in the future would likewise become moot before a needed authoritative determination by an appellate court[.]" *Johnston v. Ing,* 50 Haw. 379, 381, 441 P.2d 138, 140 (1968). "Among the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question." *Id.* (quoting *In re Brooks' Estate,* 32 Ill.2d 361, 364, 205 N.E.2d 435, 438 (1965)); *accord Okada Trucking,* 99 Hawai'i at 196–97, 53 P.3d at 804–05.

The instant case, if moot, would nevertheless meet the public-interest exception. Plaintiffs challenged a series of one-on-one conversations among the Council members made in anticipation of an upcoming resolution. Whether these conversations violated the Sunshine Law is obviously a question of a public nature. The requirement that the Council conduct its business in full view of the public and in compliance with the Sunshine Law is certainly more public in nature than private. An authoritative determination of this issue for future guidance of Council members is highly desirable and consistent with the strong public policy of protecting the public's right to know. Finally, based on the Council's stated position on serial communications, it is likely that the conduct here will reoccur and this issue will arise again. *Okada Trucking,* 99 Hawai'i at 196–97, 53 P.3d at 804–05.

██ Another exception to mootness arises when the case is capable of repetition, yet evades review. Plaintiffs' position is that this case demonstrates that future serial one-on-one communications among Council members regarding Council business is not only capable of occurring again, but likely to occur again. Because these communications are not open to the public, they may very well evade review. We conclude that this exception to the mootness doctrine applies as well.

The circuit court, in denying the First Motion to Dismiss, found that there was an ongoing controversy because the Council took the position that one-on-one communications were not precluded in all contexts. The

circuit court appeared to conclude that it could consider the issue of one-on-one communications without referring to the factual context in which this dispute arose. However, we conclude the correct application of the mootness doctrine—including the exceptions to that doctrine—requires the issue to be considered in the factual context of the original dispute. In other words, the Council's position provides support for the conclusion that the dispute about the procedure employed in considering Resolution 05–243 is capable of repetition, but evading review. It does not, standing alone, create a justiciable dispute. In any event, although the circuit court relied on incorrect reasoning, we conclude that it reached the correct result in denying the First Motion to Dismiss and accordingly proceed to consider the remaining issues.

## B. Plaintiffs had standing to enforce alleged violations of the Sunshine Law pursuant to HRS § 92–12(c).

■ Defendants next contend that Plaintiffs lacked standing to continue and thus the circuit court erred in denying Defendants' Second Motion to Dismiss. Defendants are mistaken.

As the Hawai'i Supreme Court explained, the general standing requirements do not apply to plaintiffs enforcing the Sunshine Law:

HRS § 92–12 gives [the plaintiff] standing ... as a "private attorney general," inasmuch as he is a "person upon whom the legislature has conferred the right to seek judicial review...." Ordinarily, statutes require "economic injury" rather than mere concern for the "public interest" as a predicate to standing to sue as a "private attorney general." But in the case of HRS § 92–12, "any person" is expressly authorized to initiate a lawsuit, upon the allegation that "a prohibited act" has occurred in violation of HRS §§ 92–1 through 92–13, in order to enforce compliance with or determine the applicability of the Sunshine Law[.]

*Kaapu v. Aloha Tower Dev. Corp.*, 74 Haw. 365, 380–81, 846 P.2d 882, 889 (1993) (citations and brackets omitted). These relaxed standing requirements were consistent with the policy declaration in HRS § 92–1 (1993).

HRS § 92–12 clearly and unambiguously entitles "any person" to "commence a suit in the circuit court of the circuit in which a prohibited act occurs," regardless of the person's participation in any proceeding. Such a construction of HRS § 92–12 is consistent with the legislature's "declaration of policy and intent," set forth in HRS § 92–1 (1985), "that the formation and conduct of public policy—the discussions, deliberations, decisions, and action of governmental agencies—shall be conducted as openly as possible" in order "to protect the people's right to know[.]"

*Kaapu*, 74 Haw. at 383, 846 P.2d at 889–90 (brackets in original omitted); *see also Richard v. Metcalf*, 82 Hawai'i 249, 254 n. 9, 921 P.2d 169, 174 n. 9 (1996).

In their Complaint, Plaintiffs invoked standing and jurisdiction pursuant to HRS § 92–12(c) and alleged in paragraph 45 that five or more Council members participated in a series of private, one-on-one conversations regarding, among other matters, the proposed reorganization of the Council's standing committees; the membership of the standing committees under the proposed reorganization; their support or opposition to the proposed reorganization; and their willingness to introduce a resolution to implement the proposed reorganization.

This conduct, according to the Complaint, "constitute[d] a violation of the Open Meeting Requirements of the Sunshine Law," which occurred in the circuit in which this suit was brought. Plaintiffs, as a "private attorney general," had standing to present this case to determine the applicability of the Sunshine Law to this conduct and to seek a declaration that it violated the Sunshine Law. Accordingly, the circuit court did not err in denying the Council's Second Motion to Dismiss for want of jurisdiction.

## C. The circuit court did not err in granting summary judgment in favor of Plaintiffs.

■ Under the open-meetings requirement of the Sunshine Law, "[e]very meeting

of all boards [5] shall be open to the public and all persons shall be permitted to attend any meeting unless otherwise provided in the constitution or as closed pursuant to sections 92-4 [1993] and 92-5 [Supp.2006]." HRS § 92-3 (1993) (footnote not in original). This "provision[ ] requiring open meetings shall be liberally construed" while "provisions providing for exceptions . . . shall be strictly construed against closed meetings." HRS § 92-1.

The open-meetings requirement is not unlimited. *See* HRS §§ 92-3.1 (Supp.2006); 92-4; and 92-8 (Supp.2006). In addition to these exceptions, HRS § 92-2.5 excludes "permitted interactions of members" from the general rule.

§ 92-2.5 **Permitted interactions of members.** (a) Two members of a board may discuss between themselves matters relating to official board business to enable them to perform their duties faithfully, as long as no commitment to vote is made or sought and the two members do not constitute a quorum of their board.

. . . .

(f) Communications, interactions, discussions, investigations, and presentations in this section are not meetings for purposes of this part.

Defendants assert that because HRS § 92-2.5(a) does not limit the number of these one-on-one interactions, nothing "pro-hibits one-on-one conversations from being serial, that is, after leaving one conversation, a Councilmember [sic] could engage another Councilmember [sic] in a discussion regarding matters relating to official board business."

Although HRS § 92-2.5(a) does not expressly preclude Council members from engaging in serial one-on-one conversations, HRS § 92-5(b) (Supp.2006) provides support for concluding that the one-on-one communications used to deliberate on Resolution 05-243 were improper [6]:

§ 92-5 **Exceptions.**

. . . .

(b) . . . No chance meeting, permitted interaction, or electronic communication shall be used to circumvent the spirit or requirements of [the Sunshine Law] to make a decision or to deliberate toward a decision upon a matter over which the board has supervision, control, jurisdiction, or advisory power.

Stated differently, when the public body engages in conduct that may not violate any of the specific provisions in HRS §§ 92-1 through 92-13 (1993), but nevertheless "circumvents the spirit or requirements" of the Sunshine Law, that conduct is impermissible. We are left with the question of whether the serial one-on-one interactions used to delib-

---

**5.** A "board" constitutes "any agency, board, commission, authority, or committee of the State or its political subdivisions which is created by constitution, statute, rule, or executive order, to have supervision, control, jurisdiction or advisory power over specific matters and which is required to conduct meetings and to take official actions." HRS § 92-2(1) (1993). A "meeting" means "the convening of a board for which a quorum is required in order to make a decision or to deliberate toward a decision upon a matter over which the board has supervision, control, jurisdiction, or advisory power." HRS § 92-2(3) (1993). Defendants do not dispute that the Council is a "board" and that when the Council gathers to adopt resolutions, as it did with Resolution 05-243, the Council holds a "meeting." We note that a majority of the members of the Council were alleged to have participated in the serial communications regarding Resolution 05-243 that are the subject of this lawsuit. Thus, we do not resolve the question of whether the Sunshine Law would have been violated had fewer than five Council members, i.e., fewer than the number needed to constitute a quorum of the Council, participated in those serial discussions.

**6.** Defendants' argument that there is no conflict between HRS § 92-2.5(a) (Supp.2006) and HRS § 92-5(b) (Supp.2006) because the individual Council members declared under oath in their declarations attached to Defendants' opposition memorandum to Plaintiffs' Motion for Summary Judgment that the members did "not take the position that he or she can have unlimited one-on-one communications with other Council members in all circumstances regarding council business" is unconvincing. The issue here is whether one Council member may communicate with another member about a particular item of Council business and then do the same with other Council members until members constituting a quorum have participated in the serial one-on-one communications. We fail to see how these sworn declarations absolve this court from determining the question presented.

erate on Resolution 05–243 "circumvent[ed] the spirit" of the Sunshine Law.

As the Hawai'i Supreme Court recently observed:

First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

*Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of the City and County of Honolulu,* 114 Hawai'i 184, 193–94, 159 P.3d 143, 152–53 (2007) (quoting *Peterson v. Hawaii Elec. Light Co., Inc.,* 85 Hawai'i 322, 327–28, 944 P.2d 1265, 1270–71 (1997), *superseded on other grounds by* HRS § 269–15.5 (Supp. 1999)).

The phrase "circumvent the spirit" of the Sunshine Law is far from plain and unambiguous. Thus, to ascertain the legislature's intent, this court should turn to the policy declaration in HRS § 92–1. It is the policy of our state that "the formation and conduct of public policy—the discussions, deliberations, decisions, and action of governmental agencies—shall be conducted as *openly as possible.*" HRS § 92–1 (emphasis added).

When Council members engaged in a series of one-on-one conversations relating to a particular item of Council business (the council resolution in this case), the spirit of the open meeting requirement was circumvented and the strong policy of having public bodies deliberate and decide its business in view of the public was thwarted and frustrated.

Courts that have examined the issue of serial communication have concluded, as did OIP in this case, that serial communications such as those in which Council members engaged while deliberating Resolution 05–243 violate open meetings laws similar to Ha-

wai'i's Sunshine Law. *See, e.g., Del Papa v. Bd. of Regents of the Univ. and Community College Sys. of Nev.,* 114 Nev. 388, 400, 956 P.2d 770, 778 (1998) (holding that serial electronic communications used to deliberate toward a decision violated open meetings law and "if a quorum is present, or is gathered by serial electronic communications, the body must deliberate and actually vote on the matter at a public meeting"); *State ex rel. Cincinnati Post v. City of Cincinnati,* 76 Ohio St.3d 540, 544, 668 N.E.2d 903, 906 (1996) ("The Ohio Sunshine law cannot be circumvented by scheduling back-to-back meetings which, taken together are attended by a majority of a public body."); *Booth Newspapers, Inc. v. Wyoming City Council,* 168 Mich. App. 459, 471, 425 N.W.2d 695, 700 (1988) (Open Meetings Act was violated where council members met privately in separate meetings because total number of participating members constituted a quorum even though less than a quorum participated in each meeting); *Stockton Newspapers, Inc. v. Members of the Redev. Agency of Stockton,* 171 Cal.App.3d 95, 98, 214 Cal.Rptr. 561, 562 (1985) ("a series of telephone contacts does constitute a meeting within" California's public meeting law); *Blackford v. Sch. Bd. of Orange County,* 375 So.2d 578, 580 (Fla.Dist. Ct.App.1979) (holding that "the scheduling of six sessions of secret discussions, repetitive in content, in rapid-fire seriatim and of such obvious official portent, resulted in six de facto meetings by two or more members of the board at which official action was taken," and "[a]s a consequence, the discussions were in contravention of the Sunshine Law"); *Sacramento Newspaper Guild v. Sacramento County Bd. of Supervisors,* 263 Cal.App.2d 41, 50, 69 Cal.Rptr. 480, 487 (1968) ("An informal conference or caucus permits crystallization of secret decisions to a point just short of ceremonial acceptance. There is rarely any purpose to a nonpublic pre-meeting conference except to conduct some part of the decisional process behind closed doors. Only by embracing the collective inquiry and discussion stages, as well as the ultimate step of official action, can an open meeting regulation frustrate these evasive devices."); *Jones v. Tanzler,* 238 So.2d 91, 93 (Fla.1970) ("statute should not be circumvented by . . . small

individual gatherings wherein public officials ... may reach decisions in private on matters which may foreseeably affect the public").

Furthermore, another well-established rule of statutory construction is that "where an administrative agency is charged with the responsibility of carrying out the mandate of a statute which contains words of broad and indefinite meaning, courts accord persuasive weight to administrative construction and follow the same, unless the construction is palpably erroneous." *Aio v. Hamada,* 66 Haw. 401, 407, 664 P.2d 727, 731 (1983) (quoting *Treloar v. Swinerton & Walberg Co.,* 65 Haw. 415, 424, 653 P.2d 420, 426 (1982)); *accord Haole v. State of Hawai'i,* 111 Hawai'i 144, 150, 140 P.3d 377, 383 (2006).

The OIP is the agency charged with the responsibility of administering the Sunshine Law and responding to its alleged violations. HRS § 92–1.5 (Supp.2006). Kondo's interpretation in the formal opinion dated August 4, 2005 is not "palpably erroneous" as applied to the conduct of Council members while deliberating Resolution 05–243.

For these reasons the circuit court did not err in granting summary judgment in favor of Plaintiffs, although it did err in the scope of the declaratory judgment that it issued. The Final Judgment provided that "declaratory judgment is hereby entered ... declaring that HRS § 92–2.5 does not permit members of the Honolulu City Council to engage in serial communications regarding matters of Council business except to the extent allowed under subsections (b) or (c) of HRS § 92–2.5." However, as we noted above, this dispute must be considered in the specific factual context in which it arose. Thus, we vacate the Final Judgment and remand with direction to the circuit court to enter a judgment that provides that "declaratory judgment is hereby entered ... declaring that HRS § 92–2.5 did not permit members of the Honolulu City Council to engage in serial communications involving a quorum of Council members in deliberating Resolution 05–243."

**D. The circuit court erred in failing to apply the proper analytical framework to Plaintiffs' request for attorney's fees and costs.**

Plaintiffs argue that the circuit court erred by not awarding them all of their attorney's fees and the court failed to undergo the analysis in *Schefke v. Reliable Collection Agency, Ltd.,* 96 Hawai'i 408, 445, 32 P.3d 52, 89 (2001) (incorporating the analysis in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)), which was necessary to determine "the relationship between the dismissed claims and the claim that Plaintiffs successfully litigated to judgment." Defendants counter that although *Schefke* and *Hensley* were cited in Plaintiffs' request for fees, the cases were not cited for this argument. Plaintiffs respond by pointing to their reply memorandum in support of their motion for attorney's fees:

> [I]t is fundamentally unfair to reward Defendants with a reduction in Plaintiffs' fee award for their conduct that mooted some of Plaintiffs' claims—conduct that did not remedy any violations, but merely took some future Council decisions outside the purview of the Sunshine Law. *Most fatal to their argument, however, is the fact that there is no discernible method of apportioning between the fees incurred on the mooted claims and the fees incurred on the claims upon which Plaintiffs prevailed. The research and drafting performed by counsel for Plaintiffs was all connected to the core issue of the permissibility of serial communications.*

(Emphasis added.) Plaintiffs concede that they did not address "the particulars of the *Schefke/Hensley* analytical framework," but contend that because they objected to the circuit court's apportioning between mooted issues and the one issue litigated, they sufficiently raised the argument to the circuit court.

Plaintiffs contend the circuit court erred because it failed to undergo the *Schefke/Hensley* analysis. Plaintiffs at no time, either in their initial request or in their motion to reconsider, argued in the circuit court that they were entitled to the amount requested based on the *Schefke/Hensley*

analysis. The argument that the circuit court erred in failing to undergo the *Schefke/Hensley* analysis is presented for the first time on appeal.

 "Legal issues not raised in the trial court are ordinarily deemed waived on appeal." *Assoc. of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd.*, 100 Hawai'i 97, 107, 58 P.3d 608, 618 (2002); *see also State v. Moses*, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) (explaining purpose of general rule is to "prevent[ ] appellants from presenting new legal theories as to why they should have prevailed at trial").

The Hawai'i Supreme Court has acknowledged that the general rule of waiver is not absolute:

> [W]e have also said that the rule is not inflexible and that an appellate court may deviate and hear new legal arguments when justice requires. We also stated that in the exercise of this discretion an appellate court should determine whether the consideration of the issue requires additional facts, whether the resolution of the question will affect the integrity of the findings of fact of the trial court, and whether the question is of great public import.

*Id.* at 456–57, 77 P.3d at 947–48 (quoting *Fujioka v. Kam*, 55 Haw. 7, 9, 514 P.2d 568, 570 (1973) (exception applied to argument challenging constitutionality of statute limiting actions against certain defendants because no facts were at issue, no new facts were needed, and constitutionality of statute was "of great public import")).

Plaintiffs' request for attorney's fees calls for no additional facts. Resolving this question will not affect the integrity of the findings of fact of the circuit court, and the question is of great public import in that the "main purpose behind HRS § 92–12(c) was to encourage citizens to pursue claims of violations of the [S]unshine [L]aw," *Kahana Sunset Owners Ass'n v. Maui County Council*, 86 Hawai'i 132, 136 n. 4, 948 P.2d 122, 126 n. 4 (1997).

In *Schefke*, Schefke alleged several claims against various defendants, 96 Hawai'i at 417, 32 P.3d at 61, and was successful on some, but not all, of his claims. *Id.* at 419, 32 P.3d at 63. Schefke, pursuant to statute, sought attorney's fees for the work spent on the entire case as well as an enhancement. *Id.* The trial court awarded fees for all the work performed without dividing the successful claims from unsuccessful ones. *Id.* at 443, 32 P.3d at 87. Schefke filed a cross-appeal, alleging that the trial court erred in failing to enhance the award. *Id.*

The Hawai'i Supreme Court first observed that awards of attorney's fees were usually part of "causes of action that include provisions for attorney's fees—typically characterized as being reasonable in amount—to be awarded to the prevailing party," *id.* at 444 n. 76, 32 P.3d at 88 n. 76 (internal quotation marks and citation omitted), and, thus, "an exception to the American Rule, which provides that each party is responsible for paying his or her own litigation expenses." *Id.* at 444, 32 P.3d at 88 (internal quotation marks, citation, and brackets omitted).

The supreme court further observed that "the fees awarded were calculated on the number of hours [Schefke's] counsel spent on the entire case. However, under the statutes, fees are to be awarded only on those claims on which [Schefke] prevailed." *Id.* at 444, 32 P.3d at 88 (footnote omitted).

The Hawai'i Supreme Court then turned to the analysis set forth in *Hensley*:

> In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the United States Supreme Court addressed the issue of "whether a partially prevailing plaintiff may recover an attorney's fee for legal services on unsuccessful claims." *Id.* at 426, 103 S.Ct. [at 1935–36]. According to *Hensley*, the trial court must determine (1) whether or not unsuccessful claims are related to successful claims, *see id.* at 434, 103 S.Ct. [at 1940], and (2) whether or not "the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* Unsuccessful claims are deemed unrelated if they are "distinctly different claims for relief that are based on different facts and legal theories." *Id.* Thus, "even where the claims are brought against the same defendants, counsel's

work on one claim may be unrelated to his or her work on another claim," *id.* at 434–35, 103 S.Ct. [at 1940], "work on such an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved," *id.* at 435, 103 S.Ct. [at 1940], and "the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440, 103 S.Ct. [at 1943].

On the other hand, if "the plaintiff's claims for relief involve a common core of facts or are based on related legal theories and much of counsel's time is devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," *id.* at 435, 103 S.Ct. [at 1940], "such a lawsuit cannot be viewed as a series of discrete claims." *Id.* In that situation, "a plaintiff who has won substantial relief should not have his or her attorney's fee reduced simply because the trial court did not adopt each contention raised." *Id.* at 440, 103 S.Ct. [at 1943].

As to the required level of success, "where a plaintiff has obtained excellent results, his or her attorney should recover a fully compensatory fee" because "litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.* at 435, 103 S.Ct. [at 1940]. "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436, 103 S.Ct. [at 1941].

*Id.* at 444, 32 P.3d at 88 (footnote, ellipses, and brackets in original omitted).

The *Schefke* court concluded that "[b]ecause [Schefke] did not prevail in all of his claims, the trial court must engage in a *Hensley* analysis in order to determine whether it is reasonable to award attorney's fees for the entire time [Schefke's] counsel spent on the case." *Id.* at 445, 32 P.3d at 89. The Hawai'i Supreme Court remanded the matter back to the trial court to "consider

whether [Schefke's] successful and unsuccessful claims involved a common core of facts or were based on related legal theories in arriving at attorney's fees which are reasonable." *Id.* (internal quotation marks, citation, brackets, and footnote omitted). The supreme court also instructed the trial court to "render written findings of fact and conclusions of law in support of its decision." *Id.*

We face the same situation here. Plaintiffs requested an amount seeking compensation for the time spent on the entire case; however, Plaintiffs prevailed on some, but not all, of their claims. Nevertheless, Plaintiffs were entitled to an award of reasonable attorney's fees pursuant to HRS § 92–12(c) ("The court may order payment of reasonable attorney fees and costs to the prevailing party in a suit brought under this section."). To determine whether reasonable attorney's fees in this action included compensation for successful as well as unsuccessful claims, the circuit court should have determined (1) whether the unsuccessful claims were sufficiently related to the successful ones and (2) whether Plaintiffs achieved a level of success that made the hours reasonably expended a satisfactory basis for making a fee award.

The circuit court found "the hourly rate of Plaintiffs' counsel and the number of hours expended reasonable," but found "the work performed by Plaintiffs' counsel was divisible between the moot issues and those litigated to judgment, the latter being approximately twenty-five percent (25%) of the total amount of work performed."

Had the circuit court properly applied the *Schefke/Hensley* analysis to Plaintiffs' attorney's fee request, the court would not have reduced the request by 75% because Plaintiffs' claims for relief involved a common core of facts and were based on related legal theories and much of counsel's time was devoted generally to litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. *Schefke*, 96 Hawai'i at 444, 32 P.3d at 88. Because Plaintiffs won substantial relief, they should not have their attorney's fees reduced simply because the circuit court did not adopt each contention raised. *Id.* Therefore, given that the circuit court's findings that the number of

hours expended and the hourly rate of Plaintiffs' counsel were reasonable, the circuit court should have awarded Plaintiffs' counsel $41,353.14 in fees.

### V.

The Final Judgment entered by the Circuit Court of the First Circuit on May 26, 2006 is vacated, and this case is remanded with direction to the circuit court to (1) enter judgment that provides that "declaratory judgment is hereby entered in favor of Plaintiffs and against Defendants City Council, City and County of Honolulu; Donovan M. Dela Cruz; Todd K. Apo; Barbara Marshall; Charles K. Djou; Ann H. Kobayashi; Rod Tam; Romy M. Cachola; Gary H. Okino; and Nester R. Garcia, in their official capacities as members of the Honolulu City Council, declaring that HRS § 92–2.5 did not permit members of the Honolulu City Council to engage in serial communications involving a quorum of Council members in deliberating Resolution 05–243" and (2) award Plaintiffs the amount of $41,353.14 in attorney's fees, along with costs previously awarded.

