200 P.3d 403

COUNTY OF KAUAʻI; Kauaʻi County Council; Bill "Kaipo" Asing, James Kunane Tokioka, Jay Furfaro, Shaylene Iseri–Carvalho, Daryl W. Kaneshiro, Mel Rapozo, Joann A. Yukimura, and Peter A. Nakamura in their Official Capacities, Plaintiffs–Appellees,

v.

OFFICE OF INFORMATION PRACTICES, STATE OF HAWAIʻI; and Leslie H. Kondo, Director of the Office of Information Practices, in his Official Capacity, Defendants–Appellants.

No. 29059.

Intermediate Court of Appeals of Hawaiʻi.

Jan. 30, 2009.

tices), Honolulu, Gail Y. Cosgrove, Kunio Kuwabe, (Hisaka Yoshida & Cosgrove), Honolulu, on the briefs, for Defendants–Appellants.

Matthew S.K. Pyun, Jr. (Office of the County Attorney, County of Kaua'i), David J. Minkin, Becky T. Chestnut (McCorriston Miller Mukai MacKinnon LLP), Honolulu, on the briefs, for Plaintiffs–Appellees.

RECKTENWALD, C.J., FOLEY and LEONARD, JJ.

Opinion of the Court by FOLEY, J.

Defendants–Appellants State of Hawai'i Office of Information Practices and Leslie H. Kondo, Director of the Office of Information Practices, in his official capacity, (collectively, OIP) appeal from the "Final Judgment in Favor of Plaintiffs and Against Defendants" (Judgment) filed on February 11, 2008 in the Circuit Court of the Fifth Circuit (circuit court).[1] The circuit court entered judgment in favor of Plaintiffs–Appellees County of Kaua'i, Kaua'i County Council (Council), and Council members Bill "Kaipo" Asing, James Kunane Tokioka, Jay Furfaro, Shaylene Iseri–Carvalho, Daryl W. Kaneshiro, Mel Rapozo, Joann A. Yukimura, and Peter A. Nakamura in their official capacities (collectively referred to as County) and against OIP.

The Judgment incorporated by reference the circuit court's December 7, 2007 "Order Granting Plaintiff County of Kaua'i et al.'s Motion for Summary Judgment and Denying Defendant Office of Information Practices et al.'s Motion for Summary Judgment" (Order re SJ Motions), in which the circuit court found that "[p]ursuant to the law of the case doctrine, this Court refuses to disturb the prior ruling of a judge in the same court where the issue of jurisdiction has been decided." In a footnote, the circuit court explained that "[t]he Honorable Judge George M. Masuoka [of the circuit court] denied [OIP's] Motion to Dismiss Complaint for Declaratory Relief, filed on June 30, 2005. The Order Denying [OIP's] Motion to Dismiss Complaint for Declaratory Relief was filed on August 30, 2005."

The circuit court found the following:

Paul T. Tsukiyama, Cathy L. Takase, Jennifer Z. Brooks (Office of Information Prac-

---

1. The Honorable Kathleen N.A. Watanabe presided.

Moreover, [Hawaii Revised Statutes (HRS)] § 92–12(c) provides that any person may commence a suit in the circuit court to seek enforcement of the open meetings provisions of HRS § 92–3. This Court notes that within the provisions of HRS § 92–3 public agency meetings can be closed pursuant to HRS § 92–5. As such, this Court finds that because the minutes of the ES–177 originated from a discussion in a closed meeting regarding matters privileged under HRS § 92–5(a)(4) and the disclosure of the transcribed minutes would be inconsistent with HRS § 92–5 as provided by HRS § 92–9, the statutory scheme of HRS Chapter 92 controls.

Additionally, this Court finds that although the principles behind the sunshine laws serve an important purpose, there are compelling reasons for respecting and preserving the attorney-client privilege, that is also afforded to public agencies. *Hui Malama Aina O Koʻolau v. Pacarro*, 4 Haw.App. 304, 314, 666 P.2d 177, 183–84 (1983). Furthermore, this Court finds that the privileged portions of the ES–177 minutes were so intertwined with the other portions that redaction would be impractical.

In granting County's Motion for Summary Judgment (County's SJ Motion) and denying OIP's Motion for Summary Judgment (OIP's SJ Motion), the circuit court ordered that "pursuant to HRS § 92–5(a)(4), the ES–177 minutes shall not be disclosed."

On appeal, OIP argues that the circuit court erred

(1) as a matter of law by finding that HRS Chapter 92, not HRS Chapter 92F, controlled disclosure of Council's executive session 177 (ES–177) minutes (hereinafter referred to alternatively as the ES–177 Minutes or the Minutes);

(2) as a matter of law by finding that HRS Chapter 92 granted the court jurisdiction to hear County's appeal of OIP's determination that disclosure of the ES–177 Minutes was required;

(3) as a matter of law by finding under the "law of the case" doctrine that the court had jurisdiction over this case;

(4) as a matter of law in applying the *de novo* standard of review, rather than the abuse of discretion standard, to OIP's determination that disclosure of the ES–177 Minutes was required;

(5) in finding that OIP's position was inconsistent with HRS § 92–5(a)(4) (Supp. 2008), when most of the ES–177 Minutes fell outside the HRS § 92–5(a)(4) exception; and

(6) in finding that the portions of the ES–177 Minutes protected by the attorney-client privilege were so intertwined with other portions of the Minutes that redaction would be impractical.

OIP requests that we remand this case and order the circuit court to dismiss this case for lack of jurisdiction. Alternatively, OIP asks that we reverse the Judgment and uphold OIP's determination regarding disclosure of the ES–177 Minutes.

## I.

This case arose out of Council's holding ES–177, a closed meeting, on January 20, 2005 to discuss whether Council should investigate allegedly unethical activity of the Kauaʻi Police Department (KPD).

Council stated its purpose for convening ES–177 in a public posting of the agenda item as follows:

Pursuant to Haw.Rev.Stat. §§ 92–4, 92–5(a)(4) and 92–5(a)(6), the purposes of this executive session are (1) to deliberate and decide whether an investigation of the Kauaʻi Police Department should be conducted pursuant to § 3.17 of the Kauaʻi County Charter and the process to be used in the investigation and (2) to consult with the County's legal counsel on legal issues regarding these matters. This consultation involves consideration of the powers, duties, privileges, immunities, and/or liabilities of the Council and the County as they relate to this agenda item.

After Council held ES–177, Michael Ching (Ching), Chairman of the Kauaʻi Police Commission, filed a complaint on January 26, 2005 with OIP regarding the ES–177 posting; Ching later informed OIP that he had filed the complaint as an individual and not in his

capacity as Chairman. Ching questioned whether the description in the posting of the agenda item was accurate and whether HRS § 92–5(a)(6) (Supp.2008) supported Council's reasons for holding the meeting. On February 1, 2005, OIP opened a file in response to Ching's complaint.

In OIP's opinion letter dated April 14, 2005, OIP explained that "Mr. Ching requested an opinion on whether the Council was authorized by the Sunshine Law to conduct ES[-]177 to consider whether to conduct an investigation into the [KPD]. OIP raises *sua sponte* the issue of whether the Council followed the statutorily required procedure for convening ES[-]177." OIP decided, among other things, that with the exception of certain attorney-client communications, the Sunshine Law did not support Council's convening ES–177:

> [T]he Sunshine Law generally requires that all meetings of Boards be open to the public; however, a Board may proceed in a non-public executive session to discuss one of eight specifically established reasons. *See* Haw.Rev.Stat. § 92–5 (1999).[2] The Council has stated that it proceeded in ES[-]177 pursuant to section 92–5(6) [sic], HRS, which provides that a Board may hold a meeting closed to the public "to consider sensitive matters related to public safety or security."
>
> . . . .
>
> ... OIP's review of the ES[-]177 Minutes indicate[s] that the ongoing investigations discussed were limited to (1) an investigation being conducted by the County of Kauai, Board of Ethics, (2) a police investigation which had been turned over to the County of Kauai Prosecutor and (3) a proposed investigation into the termination of a KPD recruit. It is the opinion of OIP that the matters considered by the Council in ES[-]177 do not constitute "sensitive matters related to public safety or security."
>
> ... In interpreting section 92–5(6)[sic], HRS, we are guided by the public policy underlying the Sunshine Law which is to provide for the opening of government processes to public scrutiny and participation.

Haw.Rev.Stat. § 92–1 (1975). The Supreme Court of Hawaii has mandated that the primary guideline in the construction of statutes is to ascertain and give effect to the legislative intent as expressed in the statute. *See* Atty. Gen. Op. Ltr. No. 85–27, page 5. Following this guideline, OIP narrowly interprets the provisions of section 92–5, HRS, which provide exceptions to the general requirement for open meetings.

> . . . .
>
> The Council has also taken the position that it was appropriate to go into executive session pursuant to section 92–5(a)(4), HRS, which provides that a board may go into executive session to consult with its attorney on questions and issues pertaining to the board's powers, duties, privileges, immunities, and liabilities. OIP has taken the position that section 92–5(a)(4), HRS, should be narrowly construed to allow a board to proceed in executive session to discuss matters with its attorney that would fall within the attorney-client privilege. In other words, it is proper for the Council to proceed in executive session pursuant to HRS § 92–5(a)(4), to discuss with its attorney, confidential communications made for the purpose of facilitating the rendition of professional legal services to the Council. *See* [Hawaii Rules of Evidence (HRE) Rule] 503. In reviewing the ES[-]177 Minutes, it is OIP's opinion that only an extremely limited portion of the discussion that occurred during ES[-]177 can reasonably fall within the attorney-client privilege. To the extent that the ES[-]177 Minutes would fall within the attorney-client privilege, it would be appropriate for that portion of the ES[-]177 Minutes to be redacted.
>
> As it is OIP's opinion that, with the exception of certain attorney-client communications, the Sunshine Law did not support the Council's convening ES[-]177, it is our strong recommendation that the Council act to immediately remedy its violation of the Sunshine Law by making public the ES[-]177 Minutes, subject only

---

**2.** The 1999 and Supp.2008 versions of HRS § 92–5 are identical.

to the redaction of those limited portions which constitute attorney-client privilege[d] communications.

(Footnote not in original.)

On April 19, 2005, Ching requested a copy of the ES–177 Minutes from County. On or about April 28, 2005, Richard Stauber (Stauber) made the same request to County.

In a letter dated April 21, 2005, Kaua'i County Attorney Lani Nakazawa (Nakazawa) asked OIP to reconsider its requirement that County disclose the ES–177 Minutes. Nakazawa argued that OIP had not given County an opportunity to respond to issues raised *sua sponte* in its decision. Nakazawa stated the disclosure "would affect the integrity of the [KPD], the confidentiality of investigative and personnel matters, and the ability of the Council to consult freely and openly with its attorneys."

In a May 20, 2005 letter, OIP stated that it was disinclined to reconsider its April 14, 2005 opinion.

By letter dated June 8, 2005, OIP demanded that County release the ES–177 Minutes to Ching and Stauber by June 9, 2005. OIP stated that County could withhold from disclosure a portion of page 2 of the ES–177 Minutes because that portion was protected by the attorney-client privilege, pursuant to HRS § 92–5 (Supp.2008).

On June 8, 2005, Nakazawa requested another opportunity for County to argue its position to OIP, and a day later, OIP offered County a final opportunity to do so. County subsequently provided OIP with materials explaining County's position regarding disclosure of the Minutes. In a June 17, 2005 letter, OIP explained that it would not review the materials due to County's condition that OIP make a "commitment of confidentiality" regarding the materials.

On June 17, 2005, County filed a Complaint for Declaratory Relief against OIP. Among other things, County alleged that the circuit court had jurisdiction over the claims set forth in the complaint pursuant to HRS §§ 92–12 (1993), 92F–15 (1993), 603–21.5

(Supp.2007), and 632–1 (1993). County requested that the circuit court declare OIP's opinions invalid.

On June 30, 2005, OIP filed a Motion to Dismiss Complaint for Declaratory Relief (Motion to Dismiss). Among other things, OIP argued the circuit court lacked subject-matter jurisdiction over the case. OIP maintained that HRS § 92F–15.5(b) (1993) did not provide County "the right to appeal or otherwise contest an OIP determination that a record must be disclosed under the [Uniform Information Practices Act (UIPA)]." OIP cited to Conference Committee Report No. 17 on Senate Bill No. 1799,[3] in 1989 Senate Journal, at 763–64, which stated that "a government agency dissatisfied with an administrative ruling by the OIP does not have the right to bring an action in circuit court to contest the OIP ruling." OIP also cited to HRS § 632–1, which provided, inter alia, that "[w]here … a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed."

On August 1, 2005, County filed a memorandum in opposition to the Motion to Dismiss. Among other things, County argued that under HRS § 92–12, the circuit court had statutory jurisdiction over County's claims. County maintained that HRS Chapter 92F was a general statute, covering a broad variety of material, whereas HRS Chapter 92 was specifically and directly on point with respect to the matter in the instant case because the chapter "governs board meetings and board meeting minutes, including those for executive sessions." County contended that according to HRS § 92–12(c) (1993), County was authorized to file a lawsuit in circuit court for declaratory relief as to the "open meetings" provisions of HRS § 92–3 (1993). County cited to HRS § 632–1 in support of its argument that HRS § 92–12 provided the "special form of remedy" for this case and, therefore, that remedy should be followed.

On August 4, 2005, OIP filed a reply to County's opposition memorandum.

---

**3.** "The purpose of this bill is to amend Chapter 92F, Hawaii Revised Statutes (HRS), the Uniform Information Practices Act (Modified), to ensure its smooth implementation when it takes effect on July 1, 1989." Conf. Comm. Rep. No. 17, in 1989 Senate Journal, at 763.

On August 9, 2005, the circuit court held a hearing on the Motion to Dismiss. OIP argued that according to HRS, there is no remedy on the part of the government when the government disagrees with an OIP decision. OIP contended the legislature specifically stated in HRS that it did not intend to allow a government agency to appeal an OIP determination. The circuit court took the matter under advisement, and on August 30, 2005, the court filed an order denying the Motion to Dismiss.

In OIP's SJ Motion filed on September 5, 2007, OIP requested that the circuit court grant its motion and "thereby defer to the Legislature's clear intent and legislative determination expressed that, for public policy reasons, OIP, and not the courts, be the arbiter with final authority to order an agency to disclose a government record OIP deems public under the UIPA." County filed a memorandum in opposition to OIP's SJ Motion, and OIP filed a reply memorandum.

On September 24, 2007, County and OIP stipulated to vacate the trial date and proceed on cross-motions for summary judgment.

In County's SJ Motion, filed on October 19, 2007, County argued that the ES–177 Minutes were not subject to disclosure because (1) the Minutes were required by statute to remain undisclosed, (2) the Minutes were protected by the attorney-client privilege, and (3) compliance with OIP's orders to publicly disclose the Minutes could subject County to criminal or civil penalties without meaningful review, in violation of County's due process rights. County requested a declaration from the circuit court that OIP's orders in the case were invalid and improper and violated the attorney-client privilege; the Minutes were protected from disclosure under HRS § 92F–13 (1993); and OIP's Opinions and Orders were void because (1) they were unconstitutionally vague and indefinite pursuant to the Hawai'i Constitution and (2) OIP had deprived County of due process and the equal protection of the law. County requested injunctive relief to prevent OIP from giving effect to its Opinions and Orders.

On November 9, 2007, OIP filed a memorandum in opposition to County's SJ Motion. OIP maintained the attorney-consultation exception allowing a closed meeting was narrower than the private client's attorney-client privilege and OIP had correctly applied the Sunshine Law and UIPA standards to the issues. OIP did not again argue that the circuit court lacked jurisdiction over the instant case.

The circuit court filed its Order re SJ Motions before filing its Judgment. OIP timely appealed.

## II.

### A. Standing

■■■ "Whether the circuit court has jurisdiction to hear the plaintiffs' complaint presents a question of law, reviewable *de novo*. A plaintiff without standing is not entitled to invoke a court's jurisdiction. Thus, the issue of standing is reviewed *de novo* on appeal." *Right to Know Comm. v. City Council, City & County of Honolulu*, 117 Hawai'i 1, 7, 175 P.3d 111, 117 (App.2007) (internal quotation marks and citations omitted).

### B. Motion for Summary Judgment

■■■ We review the circuit court's grant or denial of summary judgment de novo. *Hawai'i C[m]ty[.] Fed[.] Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the nonmoving party. In other words, we

must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Zane v. Liberty Mut. Fire Ins. Co.,* 115 Hawai'i 60, 72–73, 165 P.3d 961, 973–74 (2007) (quoting *Querubin v. Thronas,* 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005)).

*Right to Know Comm.,* 117 Hawai'i at 7–8, 175 P.3d at 117–18.

### C. Statutory Interpretation

As the Hawai'i Supreme Court recently observed:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

*Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of the City and County of Honolulu,* 114 Hawai'i 184, 193–94, 159 P.3d 143, 152–53 (2007) (quoting *Peterson v. Hawaii Elec. Light Co., Inc.,* 85 Hawai'i 322, 327–28, 944 P.2d 1265, 1270–71 (1997), *superseded on other grounds by* HRS § 269–15.5 (Supp.1999)).

. . . .

. . . [A]nother well-established rule of statutory construction is that "where an administrative agency is charged with the responsibility of carrying out the mandate of a statute which contains words of broad and indefinite meaning, courts accord persuasive weight to administrative construction and follow the same, unless the construction is palpably erroneous." *Aio v. Hamada,* 66 Haw. 401, 407, 664 P.2d 727, 731 (1983) (quoting *Treloar v. Swinerton &*

*Walberg Co.,* 65 Haw. 415, 424, 653 P.2d 420, 426 (1982)); *accord Haole v. State of Hawai'i,* 111 Hawai'i 144, 150, 140 P.3d 377, 383 (2006).

*Right to Know Comm.,* 117 Hawai'i at 12–13, 175 P.3d at 122–23.

### III.

### A. Applicability of Chapter 92 (Sunshine Law)

OIP maintains the circuit court's findings in the following portion of the Order re SJ Motions were erroneous:

> HRS § 92–12(c) provides that any person may commence a suit in the circuit court to seek enforcement of the open meetings provisions of HRS § 92–3. This Court notes that within the provisions of HRS § 92–3 public agency meetings can be . closed pursuant to HRS § 92–5. As such, this Court finds that because the minutes of the ES–177 originated from a discussion in a closed meeting regarding matters privileged under HRS § 92–5(a)(4) and the disclosure of the transcribed minutes would be inconsistent with HRS § 92–5 as provided by HRS § 92–9, *the statutory scheme of HRS Chapter 92 controls.*

(Emphasis added.)

OIP argues the circuit court erred by finding that the disclosure of ES–177 was controlled by HRS Chapter 92 (Sunshine Law), rather than Chapter 92F (UIPA). OIP maintains that "the provisions of chapter 92F and case law make clear that the determination of whether a government board's minutes must be disclosed or may be withheld is one that must be made, as OIP did here, under the UIPA." OIP further maintains that "if a board wishes to deny a record request for [the minutes of a properly closed meeting], it must justify the denial under a UIPA exception (generally section 92F–13(1), –13(3), and/or –13(4)) in addition to section 92–9(b)."

### (1) Applicable Sunshine Law Provisions

HRS § 92–1 (1993) provides:

**§ 92–1 Declaration of policy and intent.** In a democracy, the people are vested with the ultimate decision-making power. Governmental agencies exist to aid the people in the formation and conduct of public policy. Opening up the governmental processes to public scrutiny and participation is the only viable and reasonable method of protecting the public's interest. Therefore the legislature declares that it is the policy of this State that the formation and conduct of public policy—the discussions, deliberations, decisions, and action of government agencies—shall be conducted as openly as possible. To implement this policy the legislature declares that:

(1) It is the intent of this part to protect the people's right to know;

(2) The provisions requiring open meetings shall be liberally construed; and

(3) The provisions providing for exceptions to the open meeting requirements shall be strictly construed against closed meetings.

HRS § 92–2 (1993) defines "Board" as "any agency, board, commission, authority, or committee of the State or its political subdivisions which is created by constitution, statute, rule, or executive order, to have supervision, control, jurisdiction or advisory power over specific matters and which is required to conduct meetings and to take official actions."

HRS § 92–3 provides in relevant part that "[e]very meeting of all boards shall be open to the public and all persons shall be permitted to attend any meeting unless otherwise provided in the constitution or as closed pursuant to sections 92–4 and 92–5."

HRS § 92–4 (1993) provides:

**§ 92–4 Executive meetings.** A board may hold an executive meeting closed to the public upon an affirmative vote, taken at an open meeting, of two-thirds of the members present; provided the affirmative vote constitutes a majority of the members to which the board is entitled. A meeting closed to the public shall be limited to matters exempted by section 92–5. The reason for holding such a meeting shall be publicly announced and the vote of each member on the question of holding a meeting closed to the public shall be recorded, and entered into the minutes of the meeting.

HRS § 92–5 provides in relevant part:

**§ 92–5 Exceptions.** (a) A board may hold a meeting closed to the public pursuant to section 92–4 for one or more of the following purposes:

. . . .

(4) To consult with the board's attorney on questions and issues pertaining to the board's powers, duties, privileges, immunities, and liabilities;

. . . .

(6) To consider sensitive matters related to public safety or security.

(b) In no instance shall the board make a decision or deliberate toward a decision in an executive meeting on matters not directly related to the purposes specified in subsection (a).

HRS § 92–9(a) and (b) (1993) provides in relevant part that "the board shall keep written minutes of all meetings" that "shall be public records and shall be available within thirty days after the meeting except where such disclosure would be inconsistent with section 92–5; provided that minutes of executive meetings may be withheld so long as their publication would defeat the lawful purpose of the executive meeting, but no longer."

HRS § 92–12(b) and (c) (1993) provides in relevant part:

**§ 92–12 Enforcement.**

. . . .

(b) The circuit courts of the State shall have jurisdiction to enforce the provisions of this part by injunction or other appropriate remedy.

(c) Any person may commence a suit in the circuit court of the circuit in which a prohibited act occurs for the purpose of requiring compliance with or preventing violations of this part or to determine the applicability of this part to discussions or decisions of the public body.

**(2) Applicable UIPA Provisions**

HRS § 92F–2 (1993) provides:

**§ 92F–2 Purposes; rules of construction.** In a democracy, the people are vested with the ultimate decision-making power. Government agencies exist to aid the people in the formation and conduct of public policy. Opening up the governmental processes to public scrutiny and participation is the only viable and reasonable method of protecting the public's interest. Therefore the legislature declares that it is the policy of this State that the formation and conduct of public policy—the discussions, deliberations, decisions, and action of government agencies—shall be conducted as openly as possible.

The policy of conducting government business as openly as possible must be tempered by a recognition of the right of the people to privacy, as embodied in section 6 and section 7 of Article I of the Constitution of the State of Hawaii.

This chapter shall be applied and construed to promote its underlying purposes and policies, which are to:

(1) Promote the public interest in disclosure;

(2) Provide for accurate, relevant, timely, and complete government records;

(3) Enhance governmental accountability through a general policy of access to government records;

(4) Make government accountable to individuals in the collection, use, and dissemination of information relating to them; and

(5) Balance the individual privacy interest and the public access interest, allowing access unless it would constitute a clearly unwarranted invasion of personal privacy.

HRS § 92F–3 (1993) defines "Agency" as, inter alia, "any unit of government in this State, any county, or ... council," and defines "Government record" as "information maintained by an agency in written, auditory, visual, electronic, or other physical form."

HRS § 92F–11(a) and (b) (1993) provides:

**§ 92F–11 Affirmative agency disclosure responsibilities.** (a) All government records are open to public inspection unless access is restricted or closed by law.

(b) Except as provided in section 92F–13, each agency upon request by any person shall make government records available for inspection and copying during regular business hours.

HRS § 92F–12(a)(7) (1993 & Supp.2004) provides in relevant part that "each agency shall make available for public inspection ... [m]inutes of all agency meetings required by law to be public."

HRS § 92F–13 provides in relevant part:

**§ 92F–13 Government records; exceptions to general rule.** This part shall not require disclosure of:

(1) Government records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy;

(2) Government records pertaining to the prosecution or defense of any judicial or quasi-judicial action to which the State or any county is or may be a party, to the extent that such records would not be discoverable;

(3) Government records that, by their nature, must be confidential in order for the government to avoid the frustration of a legitimate government function;

(4) Government records which, pursuant to state or federal law including an order of any state or federal court, are protected from disclosure; and

(5) Inchoate and draft working papers of legislative committees....

HRS § 92F–15.5 (1993) provides in relevant part:

**§ 92F–15.5 Alternative method to appeal a denial of access.** (a) When an agency denies a person access to a government record, the person may appeal the denial to [OIP] in accordance with rules adopted pursuant to section 92F–42(12). A decision to appeal to [OIP] for review of the agency denial shall not prejudice the person's right to appeal to the circuit court after a decision is made by [OIP].

(b) If the decision is to disclose, [OIP] shall notify the person and the agency, and the agency shall make the record available.

### (3) Result

■ We conclude that the circuit court properly analyzed the matter in the instant case according to both HRS Chapters 92 and 92F. According to HRS § 92F–12(a)(7), the County was required to make available to the public "[m]inutes of all agency meetings required by law to be public." The "law" that requires agency meetings to be public is found in Part I of Chapter 92, the State of Hawai'i's "open meetings" or Sunshine Law provisions. HRS § 92–3 requires in relevant part that "[e]very meeting of all boards shall be open to the public ... unless otherwise provided in ... [HRS § ]92–5 [exceptions to open meetings]." The threshold question for the circuit court was whether ES–177 met an exception to the open meetings requirements put forth in Chapter 92, such as an exception enumerated in HRS § 92–5. If the circuit court found that ES–177 fell under such an exception, Council was not required to disclose the minutes of the meeting to the public. However, if the meeting did not fall under such an exception, Council was required to disclose the minutes pursuant to HRS §§ 92–9 (1993) and 92F–12 (1993 & Supp.2004).

OIP cites to *Kaapu v. Aloha Tower Development Corp.*, 74 Haw. 365, 846 P.2d 882 (1993), in support of its argument. However, *Kaapu* is inapplicable to this case because the records at issue in *Kaapu* were not board meeting minutes, but development proposals submitted by potential developers to a state agency. *Id.* at 369 & 375, 846 P.2d at 884 & 886. The distinction is relevant because, as we have already discussed, board meeting minutes are specifically covered by HRS Chapter 92, whereas development proposals, such as the ones at issue in *Kaapu,* are not.

### B. Jurisdiction

OIP makes two points regarding the circuit court's jurisdiction in this case. First, OIP asserts that because HRS Chapter 92 did not control the disclosure of executive meeting minutes, the circuit court erred by finding that Chapter 92 granted the court jurisdiction to hear County's appeal. Given that OIP argued the jurisdiction issue below in its Motion to Dismiss and the circuit court decided the issue in its order denying the Motion to Dismiss, we interpret OIP's argument to be that the circuit court erred in denying OIP's Motion to Dismiss because pursuant to Chapter 92F, County did not have standing to contest OIP's determinations to the circuit court.

OIP argues that "[a]lthough fashioned as a complaint in an original action, the Council's action is clearly, in substance, an appeal of OIP's May 20 administrative decision under the UIPA. Under the UIPA's explicit provisions, where OIP determines that the UIPA requires disclosure of a government record, the agency must disclose the record. An agency has no authority under the UIPA to appeal that determination." (Footnote omitted.)

■ The Hawai'i Supreme Court has stated with regard to statutory construction that "laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another. HRS § 1–16 [ (1985) ]." *Kam v. Noh,* 70 Haw. 321, 325, 770 P.2d 414, 417 (1989) (brackets in original omitted). Also, "where there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored." *Mahiai v. Suwa,* 69 Haw. 349, 356–57, 742 P.2d 359, 366 (1987) (citations omitted).

■ As we have already discussed, both Chapters 92 and 92F apply to the instant case. The circuit court was not wrong to determine that it had jurisdiction pursuant to Chapter 92, as that statutory scheme is applicable to this case. Chapter 92 governs board meetings and board meeting minutes, including those of executive sessions. HRS § 92–12, by its plain language, permitted "any person," including County, to bring suit in

circuit court "to determine the applicability of [Part I of Chapter 92] to the discussions or decisions" of the Council. The statute places no restrictions on who may bring an action under the statute, and no restrictions may be created: "Where the terms of a statute are plain, unambiguous and explicit, the courts are not at liberty to go outside of the language to search for a meaning which does not reasonably accord with the terms of the statute." *Kaapu*, 74 Haw. at 380, 846 P.2d at 888–89 (internal quotation marks, citation, and brackets omitted).

In support of its argument that the circuit court lacked jurisdiction, OIP cites to *Koʻolau Agricultural Co. v. Commission of Water Resource Management*, 83 Hawaiʻi 484, 927 P.2d 1367 (1996); *Punohu v. Sunn*, 66 Haw. 485, 666 P.2d 1133 (1983); and *Travelers Insurance Co. v. Hawaii Roofing, Inc.*, 64 Haw. 380, 641 P.2d 1333 (1982). However those cases are inapplicable because they concern appeals of agency decisions, whereas in this case, the applicable statute, HRS § 92–12, does not set out an appeal procedure and, in fact, expressly permits an original action in the circuit court.

OIP also argues the circuit court erred by finding, under the "law of the case" doctrine, that the court had jurisdiction over this case. OIP does not further elaborate upon this argument.

In the Order re SJ Motions, the circuit court found that "[p]ursuant to the law of the case doctrine, this Court refuses to disturb the prior ruling of a judge in the same court where the issue of jurisdiction has been decided."

■ Given our holding that the circuit court had jurisdiction over this case, pursuant to HRS Chapter 92, we need not address this point.[4]

### C. HRS § 92–5(a)(4)

OIP maintains the circuit court erred by finding that OIP's position was inconsistent with HRS § 92–5(a)(4) when most of the Minutes fell outside the HRS § 92–5(a)(4)

exception. HRS § 92–5(a)(4) provides that "[a] board may hold a meeting closed to the public pursuant to section 92–4 for one or more of the following purposes: ... (4) To consult with the board's attorney on questions and issues pertaining to the board's powers, duties, privileges, immunities, and liabilities."

OIP argues that County has not explained how County's consultation with its attorney at ES–177 concerned "questions and issues pertaining to the board's powers, duties, privileges, immunities, and liabilities." Further, OIP maintains that the discussion of why the executive session was being held did not fall within the exceptions enumerated in HRS § 92–5· because that discussion should have been held prior to the convening of ES–177. Finally, OIP asserts that Nakazawa only minimally participated in the discussion of various investigations being conducted by County and County did not, for the most part, consult with Nakazawa regarding that topic to obtain legal advice.

In its Order re SJ Motions, the circuit court found that "although the principles behind the sunshine laws serve an important purpose, there are compelling reasons for respecting and preserving the attorney-client privilege, that is also afforded to public agencies. *Hui Malama Aina O Koʻolau v. Pacarro*, 4 Haw.App. 304, 314, 666 P.2d 177, 183–84 (1983)."

An issue in *Hui Malama* was whether the council of the City and County of Honolulu had violated the open meeting requirement in the Revised Charter of Honolulu (Section 3–108(8)) when the council met privately to confer with corporation counsel regarding a request by a receiver in bankruptcy for an extension of an ordinance approving a planned housing development. 4 Haw.App. at 305–08 & 312–13, 666 P.2d at 180–83. In its dicta, this court stated:

As the court stated in *Sacramento Newspaper Guild v. Sacramento County Board of Supervisors*, 263 Cal.App.2d 41, 56, 69 Cal.Rptr. 480, 490–91 (1968):

---

4. However, we note that questions of subject matter jurisdiction can be raised at any point in the proceeding. *Lingle v. Hawaiʻi Govʻt Employ-*

ees Assʻn, AFSCME, Local 152, AFL–CIO, 107 Hawaiʻi 178, 182, 111 P.3d 587, 591 (2005).

Settlement and avoidance of litigation are particularly sensitive activities, whose conduct would be grossly confounded, often made impossible, by undiscriminating [sic] insistence on open lawyer-client conference. In settlement advice, the attorney's professional task is to provide his client a frank appraisal of strengths and weaknesses, gains and risks, hopes and fears. If the public's "right to know" compelled admission of an audience, the ringside seats would be occupied by the government's adversary, delighted to capitalize on every revelation or weakness.... Frustration would blunt the law's policy in favor of settlement and financial imprudence might be a compelled path.

The ability of a public body to confer freely with its counsel is so critical that even where the open meeting law did not specifically provide for such protection, one court has held that "[w]hile exceptions to right-to-know legislative provisions are to be strictly construed, the right of a public agency privately to consult legal counsel on the settlement or avoidance of litigation is an activity properly excepted from the right-to-know acts. A public agency should neither be given an advantage, nor placed at a disadvantage in litigation." *Port of Seattle v. Rio*, 16 Wash.App. 718, [724,] 559 P.2d 18, 22 (1977); *see also Oklahoma Assoc. of Municipal Attorneys v. State*, 577 P.2d 1310 (Okl.1978).

*Id.* at 313–14, 666 P.2d at 183–84.

In the instant case, Council stated in its public posting of the agenda item for ES–177:

Pursuant to Haw.Rev.Stat. §§ 92–4, 92–5(a)(4) and 92–5(a)(6), the purposes of this executive session are (1) to deliberate and decide whether an investigation of the Kaua'i Police Department should be conducted pursuant to § 3.17 of the Kaua'i County Charter and the process to be used in the investigation and *(2) to consult with the County's legal counsel on legal issues regarding these matters*. This consultation involves consideration of the powers, duties, privileges, immunities, and/or liabilities of the Council and the County as they relate to this agenda item.

(Emphasis added.)

■ The ES–177 Minutes reveal that, at the meeting, Nakazawa advised Council to begin by laying out Council's objectives for the discussion. She explained that the procedure Council undertook in the investigation should depend in large part on what Council hoped to achieve in conducting the investigation. Nakazawa then answered the Council chair's question about appropriate topics for discussion at ES–177. She told the Council chair that the chair had the authority to obtain information regarding a complaint pending before the Ethics Commission that might bear on Council's potential investigation of the KPD. The Council members proceeded to discuss that topic among themselves, with Nakazawa interjecting at one time to question a proposed course of action and at another time to clarify a point the Council chair had made.

Nakazawa advised Council to establish the scope of the investigation at ES–177 and the "rules" for conducting the investigation at a future meeting. She advised Council to take into consideration that the Sunshine Law would require parts of Council's investigation to be open to the public. She explained that prior to holding the future meeting, Council should identify which parts of the discussion should be held in executive session, e.g., consultation with legal counsel regarding the "rules" for conducting the investigation. Later on during ES–177, she extensively elaborated on her advice to determine the scope of the "executive session" part of the discussion.

Nakazawa explained some of the facts underlying KPD's alleged unethical behavior. She also shared her interpretation of a part of the complaint against KPD.

Pursuant to the discussion, Council unanimously passed a motion to "authorize an investigation of [KPD] under the Kaua'i County Charter Section 3.17, and direct staff to draft a resolution and an investigation plan."

In summary, most of the discussion concerned the proper procedure to use in conducting an investigation of KPD and what

topics should be discussed in a future executive session—legal questions that pertained to Council's powers, duties, and immunities.

We disagree that Nakazawa only minimally participated in the discussion of various investigations being conducted by County, as OIP asserts. Moreover, we disagree that County did not, for the most part, consult with Nakazawa regarding that topic to obtain legal advice. It is clear from the ES–177 Minutes that Nakazawa consulted with Council consistently and at length throughout the session regarding the procedure to follow in conducting an investigation of KPD and that Council's consultation with Nakazawa largely concerned the ramifications of the Sunshine Law on Council's investigation, a legal question.

### D. Redaction

■ OIP contends the circuit court erred by finding that the attorney-client portions of ES–177 were so intertwined with other portions of ES–177 that redaction would be impractical. OIP argues that only a small, discrete portion of the Minutes falls within the parameters of HRS § 92–5(a)(4) and "the remainder may readily be disclosed without revealing information that is in fact protected by section 92–5(a)(4)."

In the Order re SJ Motions, the circuit court found "that the privileged portions of the ES–177 [M]inutes were so intertwined with the other portions that redaction would be impractical."

As we have already discussed, most of the conversation at ES–177 concerned legal matters pertaining to Council's powers, duties, and immunities, i.e., the proper procedure to follow in conducting an investigation into the practices of KPD and the ramifications of the Sunshine Law on the investigation. Because the conversation consisted of either direct communication between Council members

and Nakazawa or communication among Council members that flowed from consultation with Nakazawa, we agree that redacting the privileged portions of the meeting would be impractical.

### E. Standard of Review

OIP contends the circuit court erred by applying the *de novo* standard of review, rather than the abuse of discretion standard of review, to OIP's determination that disclosure was required. OIP maintains that disclosure was within OIP's "realm of its discretion." OIP cites to *'Olelo: The Corp. for Community Television v. Office of Information Practices*, 116 Hawai'i 337, 173 P.3d 484 (2007), and *Right to Know Comm.* in support of this argument.

In *'Olelo*, the Hawai'i Supreme Court stated that "[a]n agency denial of access to public records is reviewed *de novo*." 116 Hawai'i at 342, 173 P.3d at 489. The supreme court, quoting *Paul's Electrical Service, Inc. v. Befitel*, 104 Hawai'i 412, 419–20, 91 P.3d 494, 501–02 (2004),[5] held:

> In determining whether an agency determination should be given deference, the standard to be applied is as follows:
>
> [W]hen reviewing a determination of an administrative agency, we first decide whether the legislature granted the agency discretion to make the determination being reviewed. If the legislature has granted the agency discretion over a particular matter, then we review the agency's action pursuant to the deferential abuse of discretion standard (bearing in mind that the legislature determines the boundaries of that discretion). If the legislature has not granted the agency discretion over a particular matter, then the agency's conclusions are subject to de novo review.

---

5. In *Paul's Electrical*, the supreme court's determination that an agency's action should be reviewed according to the abuse of discretion standard if the legislature has granted the agency discretion over a particular matter, was based on HRS § 91–14(g)(6) (1993). 104 Hawai'i at 417, 91 P.3d at 499. HRS § 91–14(g)(6) provides that "[u]pon review of the record the court may affirm the decision of the agency or remand the

case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are: ... (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *Paul's Electrical* did not concern HRS Chapter 92 or 92F.

'*Olelo*, 116 Hawai'i at 344, 173 P.3d at 491. The supreme court further stated that

> a matter such as balancing the public's interest in open government records against an individual's right to privacy under article I section 6 and section 7 of the Hawai'i Constitution is within OIP's designated area of expertise and is reviewed pursuant to the deferential abuse of discretion standard.
>
> Conversely, threshold issues that relate to the applicability of UIPA ... are not left to OIP's discretion.

*Id.* at 346, 173 P.3d at 493.

Here, the circuit court did not err, regardless of whether OIP's decision is reviewed *de novo* or under the deferential abuse of discretion standard (OIP's construction was "palpably erroneous," *Right to Know Comm.*, 117 Hawai'i at 13, 175 P.3d at 123).

## IV.

The "Final Judgment in Favor of Plaintiffs and Against Defendants" filed on February 11, 2008 in the Circuit Court of the Fifth Circuit is affirmed.